H. John ADZIGIAN, Jonathan G. Butler, Chester A. Dolan, Jr., Marie Gately, Executrix of the Estate of G. Lynde Gately, dec'd, John L. Grady, Arthur E. Haley, Richard Maguire, J. Joseph Maloney, Jr., Mary Regan, Administratrix of the Estate of Thomas L. Regan, dec'd, Frederick W. Roche, Hazel V. Rabbit, Joseph A. Dunn

v.

Paul F. HARRON.

Civ. A. No. 37666.

United States District Court E. D. Pennsylvania.

Jan. 15, 1969.

---

8. *See* Alabama v. United States, 304 F.2d 583, 591 (5th Cir. 1962).

Henry T. Reath, and W. Joseph En-
gler, Jr., of Duane, Morris & Heckscher,
Philadelphia, Pa., for plaintiffs.

Philip H. Strubing, of Pepper, Hamil-
ton & Scheetz, Philadelphia, Pa., for de-
fendant.

## OPINION AND ORDER

BODY, District Judge.

### I. FACTS

This is an action by certain of the
shareholders of the Pilgrim Broadcast-
ing Company ["Pilgrim"], which owned
and operated radio station WORL in
Boston, against Paul F. Harron for
damages allegedly sustained by reason
of defendant's alleged breach of a con-
tract to purchase their stock. In July
1958 the defendant was approached by a
New York stockbroker Schimmer with
facts about a Boston radio station
WORL that he might be interested in
buying. Mr. Harron, experienced in the
area of radio and television broadcast-
ing, showed interest in the purchase,
and began negotiations with the plain-
tiff stockholders, primarily through
Frederick W. Roche, Esquire, of Boston,
Massachusetts. On August 1, 1958 Har-
ron made a firm offer by letter to buy
plaintiffs' stock at twenty-two dollars
($22.00) per share. This offer was sub-
sequently accepted by all the stockhold-
ers of Pilgrim.

This so-called August 1st agreement
contemplated "a more formal agreement
evidencing the terms of this offer and
any acceptance hereof, containing stand-
ard and reasonable clauses for the pro-
tection of the parties. * * *" In ad-
dition, Harron was given the opportuni-
ty to:

> "* * * elect that this said agree-
> ment will be executed by my nominee,
> which may be a corporation to be
> formed for the purpose or any person
> not reasonably objectionable to the
> stockholders."

The more formal agreement was made
on October 3, 1958 with some later
amendments in November. It was
signed by Paul F. Harron, President of
the WORL Broadcasting Corporation
and the plaintiffs.

Following the above language in the August agreement relating to a nominee, Harron offered that:

"I shall, however, remain personally responsible for my undertakings hereunder until the transaction is closed or voided as provided below."

The stockholders, on their part, warranted, among other things:

" * * * that no undisclosed material adverse change in the condition and affairs of the Company subsequent to that date [December 31, 1957] took place nor will take place to the time of closing."

On October 3 Harron signed the "Memorandum Agreement" as President of the WORL Broadcasting Corporation of which Harron owned 89%, the rest being divided between Harron's attorney Biele [10%] and his secretary [1%]. There is no question that this corporation was formed for the purpose of entering into the more formal agreement, and was in fact to be the operating company.

The October 3 "Memorandum Agreement" recited in its preamble that:

"Whereas Paul F. Garron on August 1, 1958 offered to purchase in the name of a corporation to be formed for the purpose (Buyer) from the Sellers and the Sellers accepted said offer copy of which offer and acceptance is attached and made part hereof and marked Exhibit A. * * *"

The price remained $22.00 per share.

The Seller warranted that:

" * * * said Balance Sheet and Profit and Loss Statement [thru June 30, 1958] are true and correct and that no material adverse change in the financial condition and affairs of Company, other than those resulting from normal station operations, has taken place since June 30, 1958, nor will take place up to the time of closing."

The station's billings had been lower for the first four months in 1958 than they had been in the corresponding months of the two previous years, which had also declined. For instance, the billings for April 1958 were $29,926.54 as compared to $41,400.00 for April 1957.

This October Memorandum Agreement provided that the "net quick assets" of WORL station at closing would be $55,-000.00. However, an amendment made in November 1958 set December 31, 1958 as the time the net quick assets would be determined since it was felt that FCC approval of the WORL Broadcasting Company should not be sought immediately. Harron had other applications before the FCC at this time. The closing was to take place after FCC approval was final. If on December 31, 1958 the net quick assets were below $55,000.-00 then a downward adjustment was to be made in the selling price. No provision existed for an upward adjustment.

On March 10, 1959 the station's general manager, Arthur Haley, at Biele's request wrote him about Pilgrim's present situation:

"The billing for January 1959 is $13,266.50, as compared with January 1958, $28,521.35.

The billing for February 1959 is $16,568.78, as compared with February 1958, $26,594.38."

In addition, Haley stated: "As you will recall, we lost all our announcing staff." New announcers had been hired but the station's best salesman had also left.

On March 12, 1959, one month and two days before the agreed upon closing date, Biele wrote Roche:

"I have reviewed the same [Haley's letter] with Mr. Harron and he is astonished. That billings should have fallen off so sharply in January and February compared to previous years is baffling. While total income decreased 7% in 1957 over 1956 and 20% in 1958 over 1957, it appears that during the first two months of 1959 it dropped 46% over the same period of 1958. Additionally, it would appear that your cash position since December 31, 1958 has deteriorated materially.

It is apparent that there has been a very material adverse change in the financial condition and affairs of the company, contrary to the representations and warranties which induced entering into the agreement to purchase.

Accordingly, he advised that Mr. Harron no longer feels obligated to consummate the purchase. * * *"

The shareholders subsequently filed suit against WORL Broadcasting Corporation in the Superior Court of Massachusetts. The suit was based upon a breach of the October "Memorandum Agreement" by WORL in that the defendant refused to buy plaintiff's stock in the station. Defendant WORL defended on the grounds that there had been "material adverse changes" in the "financial condition and affairs of the Company" which excused its performance under the October agreement. An auditor was appointed to make findings of fact. Harron delegated to Biele the authority to hire a lawyer to defend the suit in Massachusetts. Vincent R. Brogna, Esq., now judge, was engaged and partially paid from funds made available by the World Broadcasting System, owned in the same proportion as WORL by Harron, Biele and Harron's secretary. Biele wrote Brogna a memorandum about the case on October 13, 1959. It included the following paragraph:

"I suspect that the plaintiffs seek a judgment against the corporation and will thereafter pursue Mr. Harron on the basis of the last sentence of the first page of the final offer to purchase * * * [August agreement]. * * * 'I shall, however, remain personally responsible for my undertakings hereunder until this transaction is closed or voided as provided below * * *', and possibly against Mr. and Mrs. Harron as subscribers, to securities of WORL."

The auditor made the following findings of fact, inter alia:

"69. * * * [T]he changes in the announcing staff came about as a result of normal station operations.

70. The defendant also contends that the changes in the sales staff were a material and adverse change in Pilgrim's affairs, not resulting from station operations. I do not so find. One salesman out of three resigned. That was not a 'material' change. Nor can I find that it was adverse. Segal, the man who resigned, had been a first rate salesman. * * * Moreover, the loss of one salesman, because he found what he believed was a better job, was in the normal course of the operation of Station WORL.

72. As I have said, the parties did not intend that the warranty should be taken to mean that there would not be a decrease in the billings. Until paid the billings were receivables, and when paid they became cash. In either event they were current assets, and as such were covered by paragraph 6 of the agreement [October], which called for a reduction in price if the net quick assets should, as of December 31, 1958, fall below $55,000.

75. In so far as it is a question of fact I find that the plaintiff committed no breach of the agreement, and was at all times ready, able, and willing to perform the obligation to deliver stock to the Buyer; indeed, the plaintiff's obligation had been performed by the delivery of the stock to the escrow agent. * * * I find that the defendant committed a breach of the agreement, for which breach it is not excused by any conduct or failure on the part of the plaintiff."

The Massachusetts Superior Court found for the plaintiffs against WORL Corporation on the basis of the auditor's report. There were no specific findings of fact by the Superior Court. Its judgment was affirmed by the Supreme Judicial Court of Massachusetts.

Being unable to satisfy their judgment against WORL Broadcasting Corporation in Massachusetts, plaintiffs brought suit on March 12, 1965 in this Court, alleging breach of the August 1st. Agreement by defendant Paul F. Harron. The plaintiffs alleged that Har-

ron guaranteed the performance of his nominee, WORL Broadcasting Corporation, under the August 1st. Agreement.

A summary judgment in favor of plaintiffs was denied by Judge Wood on October 25, 1966, stating in part:

"The paragraph in the first agreement which is allegedly a guaranty is not unambiguously such that we can hold it as a matter of law, without testimony as to the relevant circumstances."

Judge Wood did not consider the findings made by the auditor in the case against WORL Broadcasting Corporation in Massachusetts.

On May 9, 1968, after six days of trial, this Court directed a verdict to the jury in favor of the plaintiffs. This verdict was based essentially on three separate rulings of law. [1] Harron is collaterally estopped to deny WORL Broadcasting Corporation's liability to plaintiffs because he was in privity with that corporation by reason of his control over that litigation and direct financial interest in its outcome. [2] The August 1st. Agreement was incorporated into the October "Memorandum Agreement." [3] Harron guaranteed WORL's performance under the "Memorandum Agreement."

The defendant has moved for a judgment notwithstanding the verdict and alternatively, for a new trial. These issues were briefed and argued orally before this Court.

## II. RULINGS

This Court now makes the following rulings on defendant's post-trial motions.

(1) The defendant Harron was in privity with WORL Broadcasting Corporation which was sued by plaintiffs in Massachusetts and therefore would be collaterally estopped to deny WORL's liability to the plaintiffs.

(2) The August 1st. Agreement between Harron and plaintiffs was incorporated into the "Memorandum Agreement" of October 3rd., later amended.

(3) The guarantee of performance given by Harron personally in the August Agreement survived in the October Memorandum Agreement. In addition, Harron's guarantee was a general one to purchase the WORL radio station from plaintiffs. Harron did not specifically guarantee WORL Broadcasting Company's performance. He guaranteed that performance would be made by someone, either himself, a corporation, or another nominee.

(4) The language of warranty given by the plaintiffs in the August Agreement ("no undisclosed material adverse change in the conditions and affairs of the company") survived in the October Agreement. Harron's liability under his personal guarantee is conditional on *this* warranty and the question is whether *it* was broken or not.

(5) A partial new trial, *solely* on the question of whether the plaintiffs breached the warranty of "no undisclosed material adverse change in the conditions and affairs of the Company subsequent to that date [December 31, 1957] took place nor will take place to the time of closing" will be ordered.

Because the Massachusetts auditor and the courts considered a differently worded warranty in its deliberations, there is no possible way that its findings with respect to the instant warranty can be binding on the ultimate issue of liability.

## III. DISCUSSION

■ In considering these post-trial motions and arguments, this Court has viewed the evidence in a light favorable to the defendant. At this point, however, it is clear that there is not enough evidence to support defendant's motion for a judgment notwithstanding the verdict. Morris Bros. Lumber Co. v. Eakin, 262 F.2d 259, 263 (3rd Cir.1959). This Court will also deny defendant's motion for a new trial on the issues already presented to the Court. Brady v. Southern R. R., 320 U.S. 476, 64 S.Ct. 232, 88 L.Ed. 239 (1943); Jopek v. New York

Central R. R., 353 F.2d 778 (3rd Cir. 1965).

## (1) THE DEFENDANT IS COLLATERALLY ESTOPPED TO DENY WORL BROADCASTING CORPORATION'S LIABILITY

The defendant, Harron, was in privity with the WORL Broadcasting Corporation when it defended a suit by the present plaintiffs in Massachusetts. The Massachusetts suit was based upon WORL's breach of the October 3rd. Memorandum Agreement signed by Paul F. Harron, President of the WORL Broadcasting Corporation.

Privity is defined by Restatement of the Law, Judgments § 84:

"A person who is not a party but who controls an action, individually or in cooperation with others, is bound by the adjudications of litigated matters as if he were a party if he has a proprietary or financial interest in the judgment or in the determination of a question of fact or of a question of law with reference to the same subject matter or transaction; if the other party has notice of his participation, the other party is equally bound."

A similar definition of privity has been adopted by the courts of Pennsylvania. Williams v. Lumberman's Ins. Co., 332 Pa. 1, 1 A.2d 658 (1958); see Pioneer Insulation & Modernizing Corp. v. City of Lynn, 331 Mass. 560, 563, 120 N.E.2d 913 (1954).

 While states must give the same effect to foreign judgments as the foreign state would, the enforcing state must first determine whether the foreign judgment should be applied at all. In the instant case, it is up to this Court, applying Pennsylvania general law, to determine whether collateral estoppel will be applied. In Bigelow v. Old Dominion Copper Mining and Smelting Co., 225 U.S. 111, 32 S.Ct. 641, 646, 56 L.Ed. 1009 (1912) the Supreme Court states:

"It would seem to follow that the Massachusetts court had the legal right to inquire, not only whether Bigelow was a party to the New York judgment in the sense that he might have appeared and defended, or appealed from it, but whether the cause of action and the relation of Bigelow to it, or to the parties, was such that the New York court would pronounce a judgment which would bind him, or conclude the plaintiff from suing him upon the same facts. * * *" [136]

It matters very little which state law is applied in this situation because Harron's personal control is very clear. Harron, through his personal attorney, controlled the decisions with regard to the Massachusetts suit against WORL Broadcasting Corporation. Harron and Biele decided to defend the Massachusetts suit. Their reasoning seems to have been based upon Harron's personal guarantee in the August 1st. Agreement. WORL Broadcasting Corporation was judgment proof in Massachusetts as its total assets consisted of $1,000.00 in a bank account in Pennsylvania. This is brought out clearly in Biele's Memorandum of October 13, 1959 to Vincent Brogna, Esquire, who was hired by Biele with Harron's consent to defend the Massachusetts action. Biele states:

"I suspect that the plaintiffs seek a judgment against the corporation and will thereafter pursue Mr. Harron on the basis of the last sentence of the first page of the final offer to purchase, * * *. '* * * I shall, however, remain personally responsible for my undertakings hereunder until this transaction is closed or voided as provided below * * *', and possibly against Mr. and Mrs. Harron as subscribers to securities of WORL."

In addition, Harron stated his displeasure of the Massachusetts suit in his deposition admitted into evidence:

"* * * trying to get *me* to buy something for half a million dollars that wasn't worth two hundred thousand dollars." [162]

Both Biele and Harron decided that an appeal should be taken in the Massachusetts litigation. This is very impor-

tant to the question of control. It is true that Harron did not appear personally in the Massachusetts case; however, his lawyer Biele was present and kept Harron informed of the progress of the case.

Harron had a financial interest over and above that of an ordinary stockholder. He believed that if the Massachusetts case were successfully defended, there would be nothing left to sue him on in Pennsylvania. His personal guarantee depended upon the unjustified nonperformance by his nominee under the October 3rd. Agreement.

 The defendant has argued that unless the Massachusetts courts had personal jurisdiction over the defendant, collateral estoppel cannot be applied. However, this Court takes the position that the *Bigelow* case does not so require. Bigelow says the enforcing state must look to see if either one of two things exists in the foreign judgment: (1) personal jurisdiction or (2) privity. *Bigelow*, supra, 136, 32 S.Ct. 641, 56 L. Ed. 1009. Privity, based on control and financial interest in the outcome of the suit, is sufficient to allow this Court to apply collateral estoppel, notwithstanding the lack of in personam jurisdiction.

 Res judicata is not applicable here since the parties and subject matter of the Massachusetts suit are different. Plaintiffs contended that Harron was the real party in interest and this Court should pierce WORL's corporate veil. However, in forming WORL Broadcasting Corporation the defendant worked no wrong or fraud on the plaintiffs. It was anticipated by both parties that such a corporation would, in fact, sign the final formal agreement.

 It has been argued that WORL Broadcasting Corporation carried on no real business activity and was merely a "shell" corporation. To a certain extent this is true; however, that is to be expected since operation of the radio station was to be its corporate purpose. Although no stock was issued and no stock book or certificates were made up,

the corporation was nevertheless incorporated in Massachusetts and had by-laws and elected officers (Harron, President; Biele, Treasurer; Brogna, Clerk). In addition, the Federal Communications Commission approved a broadcasting license for it and the First Pennsylvania Banking and Trust Company gave firm assurance on October 20, 1958 for a loan of $235,000.00 toward the purchase price.

### (2) THE AUGUST AGREEMENT WAS INCORPORATED BY REFERENCE INTO THE OCTOBER AGREEMENT

 There is little question that the August agreement was incorporated into the October agreement. The preamble to the October "Memorandum Agreement" states:

"Whereas Paul F. Harron on August 1, 1958, offered to purchase in the name of a corporation to be formed for the purpose (Buyer) from the Sellers and the Sellers accepted said offer, copy of which offer and acceptance is attached hereto and made a part hereof and marked Exhibit A."

### (3) THE DEFENDANT'S GUARANTEE SURVIVED THE OCTOBER AGREEMENT

 In the August agreement the defendant, Harron, promised that:

"I shall, however, remain personally responsible for my undertakings hereunder until this transaction is closed or voided as provided below."

The transaction was never "voided". "[U]ntil this transaction is closed" must be interpreted to mean when the title to the radio station passes, notwithstanding the fact that Harron himself might not take title personally.

 There is no compelling reason why the personal guarantee of Harron did not survive the October agreement and exist side-by-side with WORL's obligation to purchase under the October agreement.

There is little merit in the contention that the October "Memorandum Agree-

ment" was different from what was contemplated by the August agreement. It is clear that the August agreement was intended to survive the October agreement to the extent that its terms were not superceded. Certain changes were contemplated by the August agreement:

"* * * that a more formal agreement evidencing the terms of this offer and any acceptance hereof, containing standard and reasonable clauses for the protection of the parties, will be negotiated. * * *"

The October agreement was the kind of agreement that was contemplated by the August agreement. Any changes in the October agreement were those that typically take place when a "more formal agreement" is made. The price per share remained constant throughout all of the negotiations and agreements. The fact that the plaintiff's warranty was changed from "no undisclosed material adverse change in the condition and affairs of the company" to "no material adverse change in the financial condition and affairs of the Company other than those arising from the normal station operations", is of no consequence since the defendant, under this Court's order, will receive the benefit of the earlier warranty.

### (4) PLAINTIFFS' WARRANTY GIVEN TO HARRON IN THE AUGUST AGREEMENT SURVIVED THE OCTOBER AGREEMENT

 There is no reason why the plaintiffs' warranty against "undisclosed material adverse change in the condition and affairs of the Company * * * took place nor will take place to the time of closing" did not survive when the August agreement was incorporated into the October agreement. Simply because WORL Broadcasting Corporation received a different warranty, does not mean that defendant's guarantee becomes conditioned on the same warranty as WORL. This Court finds that defendant's August guarantee and plaintiffs' warranty survive and exist simultaneously. If it were decided that Har-

ron was the real party in interest and WORL's corporate entity was thereby pierced a different situation would be presented because then it could be argued that Harron himself had agreed to the changes in the second warranty.

 The defendant was not allowed to introduce into evidence certain findings (27 and 35) from the auditor's report which state that the October agreement superceded the August agreement. Collateral estoppel, however, does not require this Court to be bound by these findings since the subject matter of the Massachusetts suit was WORL's liability under the October agreement and the warranties contained therein, not Harron's liability under his August guarantee.

 There is no question that for purposes of the Massachusetts litigation the October 3rd. agreement superceded the August 1st. agreement. The doctrine of collateral estoppel only "precludes relitigation of issues actually litigated and determined in the prior suit * * *" Lawlor v. National Screen Service, 349 U.S. 322, 326, 75 S.Ct. 865, 867, 99 L.Ed. 1122 (1955). Simply because the auditor had to determine which warranty applied to the parties before him, namely WORL and the plaintiffs, does not mean that he also determined which warranty applied to the parties before this Court, Harron and plaintiffs. In stating that the October warranties superceded those of August, the auditor went further than he had to go to dispose of the question of WORL's liability under the October agreement.

### (5) NEW TRIAL SOLELY ON ISSUE OF WHETHER PLAINTIFFS BREACHED THEIR WARRANTY AGAINST "MATERIAL ADVERSE CHANGE IN THE CONDITIONS AND AFFAIRS OF THE COMPANY."

 Because (1) the warranties given in August and October are different in wording, (2) no evidence has been presented to this Court on the meaning of the August warranty, and (3) the

warranty's meaning is ambiguous without additional evidence, this Court will order a trial limited solely to a determination of:

"* * * undisclosed material adverse change in the condition and affairs of the Company subsequent to that date took place nor will take place to the time of Closing."

If the answer is in the affirmative, a judgment will be entered for the defendant. If answered in the negative, the verdict in favor of the plaintiffs will be reinstated.

 It should be noted that in directing a verdict for the plaintiffs at trial, the Court in effect did not specifically rule on the question of the survival of the August warranty. That decision, simply stated, held that Harron was in privity with WORL and since the August 1st. agreement was incorporated, he was liable under his guarantee. This Court now takes the position that Harron's guarantee was not given specifically for WORL but for performance generally. In other words, Harron's guarantee and hence liability is predicated upon whether someone performed according to the more formal agreement. Since his nominee did not perform under the October agreement, the question now becomes whether Harron becomes liable under his personal guarantee in the August agreement. There are no compelling legal reasons why Harron's guarantee should not be governed by the terms of the August 1st. warranty. The October 3rd. agreement merely determines when performance has or has not been made by Harron's nominee, thereby calling into question Harron's liability under the August 1st. agreement.

## ORDER

Accordingly, this fifteenth day of January 1969, it is ordered that there be a trial limited solely to a determination of whether an:

"* * * undisclosed material adverse change in the condition and affairs of the Company subsequent to that date took place nor will take place to the time of Closing."

If the answer is in the affirmative, a judgment will be entered for the defendant. If answered in the negative, the verdict in favor of the plaintiffs will be reinstated.