The PAUL REVERE PROTECTIVE LIFE INSURANCE CO. and The Paul Revere Life Insurance Co. and The Paul Revere Variable Annuity Insurance Co.

v.

Sigfried WEIS and Robert F. Weis.

Civ. A. No. 80–2709.

United States District Court,
E. D. Pennsylvania.

June 11, 1981.

Dennis J. Faucher, Saul, Ewing, Remick & Saul, Philadelphia, Pa., for plaintiffs.

Francis F. Devine, III, White & Williams, Philadelphia, Pa., for defendants.

1. See Mentz, Menaker, and Pesiri, *Leveraged Leasing and Tax-Exempt Financing of Major U.S. Projects*, TAXES 553–60 (August 1980);

## MEMORANDUM OF DECISION

McGLYNN, District Judge.

This action was commenced by the plaintiffs, The Paul Revere Protective Life Insurance Company, The Paul Revere Life Insurance Company and The Paul Revere Variable Annuity Insurance Company (herein collectively referred to as "Paul Revere Companies") to recover monies from defendants, Sigfried Weis and Robert F. Weis ("the Weises"), as guarantors of promissory notes issued in connection with a leveraged lease of railroad boxcars. Jurisdiction of the case is based on diversity of citizenship between the parties. *See* 28 U.S.C. § 1332 (1977). Presently before the court are plaintiffs' and defendants' cross-motions for summary judgment pursuant to Federal Rule of Civil Procedure 56. For the reasons set forth herein, plaintiffs' motion for summary judgment will be granted and defendants' motion will be denied.

### I.

A leveraged lease is an agreement whereby the lessee selects the type and cost of equipment to be leased. The equipment is then purchased by the lessor from the manufacturer and leased by the lessor to the lessee. The lessor pays part of the cost of the equipment with its own funds and finances the balance by the issuance of a note in favor of an institutional lender. The note is typically secured by a security interest in the equipment and by an assignment of the lease. A leveraged lease transaction is designed to provide maximum tax benefits[1] to the owner-lessor, and if, as in this case, the owner-lessor is a partnership, these benefits accrue to the general and limited partners.

In the instant case, the lessee is National Railway Utilization Corporation ("NRUC") and the lessor is S&R Boxcar Company ("S&R"), a Pennsylvania limited partnership in which Girard Leasing Corporation ("Girard Leasing"), a subsidiary and affiliate of Girard Bank, is the general partner

Schnee, *Equipment Leasing: A Remaining Tax Shelter*, THE TAX ADVISOR 452–460 (August 1979).

and the defendants, Weises, are the limited partners. The Paul Revere Companies now stand in place of the institutional lenders having purchased Girard Leasing's interest in the loan.

In early 1979, NRUC had agreed to purchase 400 boxcars from Berwick Forge & Fabrication Company ("Berwick Forge"), a division of the Whittaker Corporation. In March 1979, Girard Leasing agreed to finance the purchase of eighty of the boxcars through a leveraged lease with S&R as the lessor. Accordingly, on March 28, 1979, NRUC assigned to S&R its obligation to purchase eighty boxcars from Berwick Forge at a cost of $3,058,240. S&R purchased the eighty boxcars on March 28, 1979 and then on the same date leased the boxcars to NRUC. S&R financed its purchase of the eight boxcars by a loan from Girard Leasing in the amount of $3,178,-240.[2] The loan was evidenced by a promissory note dated March 28, 1979 executed by S&R in favor of Girard Leasing. The note was made subject to the terms of a security agreement dated March 28, 1979 which granted Girard Leasing a security interest in the eighty boxcars. The note was also secured by an assignment of the equipment lease. In accordance with the nonrecourse nature of the notes, the security agreement of March 28, 1979 provided that in the event of a default, plaintiffs may accelerate and obtain a judgment against S&R for the total balance due under the notes, but judgment cannot be satisfied from any partnership assets other than the boxcars.

In early April, 1979, the notes were paid in part when Girard Leasing as general partner and the Weises as limited partners made an additional contribution to the capital of S&R in the aggregate amount of $635,648.80. A new note dated April 16, 1979 in the amount of $2,606,156 was executed by S&R in favor of Girard Leasing. The note was subject to a security agreement dated April 16, 1979 which again provided that a judgment cannot be satisfied

from any partnership assets other than the boxcars. The Weises executed guarantees dated April 13, 1979 in favor of Girard Leasing pursuant to which they guaranteed S&R's payment when due of all the obligations and liabilities under the notes.

By a Participation Agreement dated May 7, 1979, which both the plaintiffs and defendants signed, the Paul Revere Companies bought out Girard Leasing as the institutional lender, although Girard Bank agreed to act as their agent. Accordingly, on June 1, 1979, the plaintiffs paid to Girard Leasing the sum of $2,606,156, the principal amount of the promissory note dated April 16, 1979, held by Girard Leasing as the institutional lender. On June 1, 1979, S&R in turn executed three promissory notes in favor of the Paul Revere Companies in the aggregate amount of $2,606,156. The notes were made subject to a security agreement dated May 7, 1979 which granted Girard Bank, as agent of the Paul Revere Companies, a security interest in the eighty boxcars. The three notes were also secured by an assignment executed on May 7, 1979 of the equipment lease.

In conjunction with the Participation Agreement, the Weises executed guarantees dated June 1, 1979 in favor of the Paul Revere Companies limited to an aggregate liability of $1,335,557. Pursuant to paragraph one of these guarantees, the Weises again guaranteed the payment when due of the obligations and liabilities of S&R under the nonrecourse notes:

1. *Guarantee.* The undersigned *absolutely, unconditionally* and irrevocably guarantees the due and punctual payment when due of all of the Maker's obligations and liabilities to the Investors under the Maker's promissory notes . . . . dated June 1, 1979 . . . (emphasis added).

. . . .

. . . The Guarantor's obligations hereunder shall be direct, absolute and uncondi-

2. The loan was in the amount of $3,178,240 rather than $3,058,240 (the cost of the boxcars) in order to pay a certification and inspection

fee in the amount of $120,000 charged by NRUC prior to its acceptance of the boxcars under the lease.

tional irrespective of (i) the legality, validity or enforceability of the Notes....

The Guarantees further provided:

5. *Default by Maker; No Set Off.* In case of the failure of timely payment by the Maker on the Notes, for any reason whatsoever, the Guarantor shall pay the Notes on demand, and it shall not be necessary to take any further action against the Maker or otherwise in any respect; it being the intention of the Guarantor that the obligation herein set forth is a guarantee of performance, not merely collection.

In early 1980, the country's economic recession caused a dramatic decrease in the utilization rate of boxcars. This recession affected NRUC as well as every other user of the boxcars, and NRUC ceased making rental payments to S&R. Accordingly, during the three months prior to June 28, 1980, S&R received no rental income from NRUC on the boxcars. Since it had received no rental income from NRUC during the preceding three months, S&R did not make payment to the plaintiffs. The plaintiffs immediately declared the notes to be in default.

Three days later, on July 1, 1980, the plaintiffs commenced this action against the Weises. The plaintiffs did not commence suit against S&R as the principal debtor nor did they declare, as assignees of the equipment lease, a default under the equipment lease even though NRUC failed to make the rental payments required by the lease. The Paul Revere Companies also have made no attempt to recover possession of the eighty boxcars.

## II.

■ The issue presented to the court is whether, based on the language of the guaranty contracts signed by the defend-

ants, the defendants are liable to the plaintiffs for S&R's default on the promissory notes. Both plaintiffs and defendants have filed cross-motions for summary judgment.[3] "It is well settled that cross-motions for summary judgment do not warrant the court in granting summary judgment unless one of the moving parties is entitled to judgment as a matter of law upon facts that are not genuinely disputed. This can be established by the pleadings, depositions, admissions on file and affidavits." *Manetas v. International Petroleum Carriers, Inc.,* 541 F.2d 408, 413 (3d Cir. 1976) (citations omitted). The party moving for summary judgment has the burden of demonstrating that there is no genuine issue of material fact. *Id.* "Summary judgment is properly used for interpreting a contract whose terms are considered by opposing parties to be clear and unambiguous, despite the parties' divergent views of what the agreement provided." *Goldinger v. Boron Oil Co.,* 375 F.Supp. 400, 413 (W.D.Pa.1974), aff'd mem., 511 F.2d 1393 (3d Cir. 1975). *Accord, Champale, Inc. v. Joseph S. Pickett & Sons, Inc.,* 599 F.2d 857, 859 (8th Cir. 1979). The plaintiffs and defendants agree that the language of the guaranty contract at issue in the present case is not unclear or ambiguous (see Defendants' Memorandum of Law at 12; Transcript of Oral Argument, 4/28/81, at 27), and therefore the dispute concerning the interpretation of the guaranty contract can properly be resolved by the procedure of summary judgment. I therefore will proceed to examine the opposing views of what the guarantees provided.

## III.

In defense of this suit, defendants raise three defenses[4] and assert a counterclaim.

---

3. The parties agree that Pennsylvania law is to be applied to the substantive issues in the case. *Cf. Finance America Credit Corp. v. Kruse Classic Auction Co.,* 428 F.Supp. 135, 136 (E.D. Pa.1977) (Where guaranty contract was made in Pennsylvania and was to be performed in Pennsylvania, Pennsylvania law applied to interests of the parties).

4. In their answer, defendants assert other defenses. However, plaintiffs discuss only these three defenses in their memoranda in opposition to plaintiffs' motion for summary judgment and in support of their own motion. I have considered the other defenses raised in Defendants' answer but not in their memoranda and found that these defenses have no sup-

Defendants allege first that the plaintiffs have failed to utilize or preserve and protect the collateral granted to the plaintiffs by the security agreement of May 7, 1979 and thereby failed to mitigate their damages; second, that there is no legal consideration for the guarantees; and last, that the wording of the loan documents imposes no obligation on the defendants to make payments. I will consider these arguments seriatim.

■■■ First, defendants, relying on sections 131(2) [5] and 132 [6] of the Restatement of Security (1941), argue that plaintiffs cannot bring this action to enforce the guarantees because plaintiffs have failed to mitigate their damages by not repossessing the railroad cars and by not preserving and protecting the value of the collateral. Plaintiffs concede that no action has been taken to repossess their collateral but maintain that this alone does not bar their action against defendants nor warrants a reduction of their damages. Plaintiffs are correct in this contention. It is well established that when, as in this case, the guaranty is an absolute or unconditional one and the creditor has other security, he need not proceed against the security but may at once sue the guarantor on the default of the principal debtor. *Cancelmo's Estate*, 16 Pa.D.&C. 1 (C.P.Phila.1931), *aff'd*, 308 Pa. 178, 162 A. 454 (1932); 38 C.J.S., *Guaranty* § 61, at 1219 (1943). When the guarantee is absolute or unconditional, there is no limitation on the right of the creditor to bring an action directly against the guarantor when the principal commits a default. As the Third Circuit has stated, "[A]n unconditional guaranty is one whereby the guarantor agrees to pay or perform a contract on default of the principal *without*

*limitation.* It is an absolute undertaking to pay a debt at maturity or perform an agreement if the principal does not pay or perform" (emphasis added). *Fireman's Fund Insurance Co. v. Joseph J. Biafore, Inc.*, 526 F.2d 170, 174 (3d Cir. 1975) (quoting *Continental Leasing Corp. v. Lebo*, 217 Pa.Super.Ct. 356, 363, 272 A.2d 193, 197 (1970)). Plaintiffs are therefore not barred from bringing this action against defendants merely because plaintiffs have not attempted to repossess the boxcars.

Defendants' allegation that plaintiffs have failed to preserve and protect the value of the collateral because they have not made any good faith effort to utilize the boxcars is contrary to the undisputed facts. Plaintiffs have shown (see deposition of Michael T. O'Kane at 125–26) and defendants admit (see Defendants' Memorandum of Law at 8) that due to economic recession, there occurred in early 1980 a dramatic decrease in the use of boxcars. Indeed, this litigation occurred because NRUC was unable to utilize the boxcars. In order to defeat plaintiffs' motion for summary judgment, which is supported by affidavits and depositions, defendants cannot rely on naked allegations but rather must come forth with facts supported by affidavits or references to the record developed during discovery. Fed.R.Civ.P. 56(e); *Tunnell v. Wiley*, 514 F.2d 971, 976 (3d Cir. 1975). Defendants have submitted no evidence whatsoever to support their allegation that plaintiffs could have utilized the railcars if they so desired. I therefore will not consider this bald allegation as a valid defense to plaintiffs' claim.

■■■ Even if plaintiffs have failed to preserve or protect the boxcars, the plaintiffs nonetheless would not be barred from

---

port in the record and, therefore, I will not discuss them.

**5.** Section 131(2) provides the following:

(2) The creditor has a duty first to enforce his security interest in the property of the principal, if (a) his failure to do so will result in unusual hardship to the surety and doing so will not prejudice the creditor, or (b) the surety has only guaranteed the collection of the principal's obligation.

**6.** Section 132 provides the following:

Where the creditor has security from the principal and knows of the surety's obligation, the surety's obligation is reduced pro tanto if the creditor (a) surrenders or releases the security, or (b) wilfully or negligently harms it, or (c) fails to take reasonable action to preserve its value at a time when the surety does not have an opportunity to take such action.

bringing this action. Defendants are correct in noting that under certain circumstances if the plaintiffs have wasted their security, then the obligation of the defendant guarantors would be reduced to the extent that they were injured. RESTATEMENT OF SECURITY § 132 (1941). However, because the guaranty agreement in the instant case is an absolute and unconditional one and because the contract of guaranty did not require the plaintiffs to take such action, the foregoing rule of law has no applicability. *Continental Leasing Corp. v. Lebo*, 217 Pa.Super.Ct. 356, 363, 272 A.2d 193, 197 (1970). "[A] creditor who is party to an unconditional guaranty contract and who additionally holds a security interest, is not under an affirmative duty to preserve the collateral unless the guarantor relies on the collateral." *Fireman's Fund Insurance Co. v. Joseph J. Biafore, Inc.*, 526 F.2d 170, 175 (3d Cir. 1975). In the instant case, there is an absence of any element of reliance on the part of defendants and therefore plaintiffs are not under any duty to preserve or protect the collateral. The case of *Girard Trust Bank v. O'Neill*, 219 Pa.Super.Ct. 363, 281 A.2d 670 (1971), which is relied upon by the defendants in support of this argument, is inapposite to the facts of the present case for the *Girard* case "does not at all address itself to the issue of unconditional suretyship agreements" such as the one present in the case at bar. *Massaro v. Industrial Valley Bank*, 16 Pa.D. &C.3d 499, 502 (C.P.Phila.1980).

█ The waiver provisions of the guarantees also preclude the defendant from raising as a defense the failure of plaintiffs to preserve and protect the value of the collateral. The specific provisions are as follows:

3. *Consent by Guarantor.* The Guarantor consents to the following without notice to the Guarantor and agrees that none of the following shall in any way impair this Guarantee or otherwise affect the Guarantor's liability or obligation hereunder:

.    .    .    .    .

(b) The exchange, release or surrender of all or any collateral security, including

other guarantees, which may at any time be held to secure the Notes . . . .

4. *Failure by Investors, etc.* No delay, forbearance or failure to act by the Investors or their Agent, with or without notice to the Guarantor, shall prejudice the Investors' rights against the Guarantor hereunder.

Accordingly, defendants' argument regarding the misuse or nonuse of plaintiffs' collateral must fail.

### IV.

█ Defendants' second argument is that the guarantees are unenforceable because they were made without consideration. It is well established that only those contracts of guaranty which are founded upon some consideration are enforceable. *Harr v. Perkins*, 335 Pa. 186, 6 A.2d 534 (1939). However, to have an enforceable guaranty contract, it is not necessary that consideration pass directly to the surety; the extension of credit to the principal debtor is sufficient consideration for the promise of the surety. *Florida Asphalt Pavement Manufacturing Co. v. Federal Reserve Bank*, 76 F.2d 326, 327–28 (5th Cir.), *cert. denied*, 296 U.S. 577, 56 S.Ct. 87, 80 L.Ed. 407 (1935); 38 C.J.S. *Guaranty* § 26, at 1166 (1943). Defendants argue, however, that plaintiffs did not advance any monies to the Weises or S&R, but merely purchased Girard Leasing's interest and, therefore, no consideration moved to S&R as principal debtor or to the Weises. This argument is without merit. The following excerpts from the participation agreement of May 7, 1979, which was signed by both plaintiff and defendants, whereby the plaintiffs purchased the interest of Girard Leasing, established that defendants knew that the guarantees were a condition to plaintiffs' involvement:

WHEREAS, as further security for the payment of the indebtedness represented by the Promissory Notes, the Guarantors will issue and deliver to the Agent their separate personal guarantees in substantially the form of Exhibit D hereto (hereinafter called a Guarantee);

.    .    .    .    .

4. The obligation of the Investors and the Agent to make payments as herein provided shall be subject to the receipt by the Agent on the Closing Date of the following documents:

. . . . .

(g) The separate Guarantee (delivered to the Agent only) of each of the Guarantors, unconditionally guaranteeing the payment and fulfillment when due of all of the Owner's obligations and liabilities under the Promissory Notes; *provided, however,* that the liability thereby of Sigfried Weis shall be limited to an amount not exceeding $333,-889, and the liability thereby of Robert F. Weis shall be limited to an amount not exceeding $1,001,668.

The reliance by the plaintiffs on the guarantees submitted by defendants supplies the necessary consideration to support the guarantees. "[W]here one party agrees with another party that, if such party for a consideration performs a certain act for a third person, he will guarantee payment of the consideration by such person, the act specified is impliedly requested by the guarantor to be performed and, when performed, constitutes a consideration for the guaranty." *Sun Oil Co. v. Heller,* 248 N.Y. 28, 32–33, 161 N.E. 319, 320 (1928). Here the defendants' guarantees induced the plaintiffs to lend money to S&R and therefore, the guarantees are supported by consideration. Accordingly, defendants' argument that the guarantees should not be enforced for lack of consideration must fail.

■ Even if consideration were not found, the guarantees of May 7, 1979, which state that the defendants signed them "intending to be legally bound", are legally valid and enforceable without consideration because the Pennsylvania Uniform Written Obligations Act, Pa.Stat.Ann. tit. 33, § 6 (Purdon 1967), is applicable to the guarantees. This Act provides:

A written release or promise, hereafter made and signed by the person releasing or promising, shall not be invalid or unenforceable for lack of consideration, if the writing also contains an additional express statement, in any form of language, that the signer intends to be legally bound.

The guarantees given by the defendants are a clear and formal expression of the Weises' intention to be legally bound and, under the Act, are enforceable against them regardless of whether consideration existed for their promises. *See Fasco v. Modernage, Inc.,* 311 F.Supp. 161, 164 (W.D.Pa.1970).

## V.

Defendants' final defense is that the wording of the loan documents imposes no obligation on the defendants to make payments. Before I consider the specifics of this contention, it would be helpful first to review some basic rules regarding the interpretations of guaranty contracts.

■ The nature and extent of the liability of a guarantor depends on the terms of the contract of guaranty, *Adzigian v. Harron,* 297 F.Supp. 1317 (E.D.Pa.1969), and if the terms of the contract so state, a guarantor may assume a greater liability than that of the principal. *E.g., Waters v. Chase,* 142 Pa. 463, 21 A. 882 (1891); *Cross v. Rosenbaum,* 7 Misc.2d 309, 161 N.Y.S.2d 337 (1957); 38 C.J.S. *Guaranty* § 43, at 1192 (1943). In ascertaining the meaning of the language of a guaranty contract, the same rules of construction apply as in the case of other contracts. 38 C.J.S. *Guaranty* § 28, at 1177 (1943). The court must determine and give effect to the intention of the parties as ascertained by a fair and reasonable interpretation of the terms used and the language employed in the contract of guaranty as read in the light of the attendant circumstances and the purposes for which the guaranty was made. *Land Title Bank and Trust Co. v. Baron,* 341 Pa. 241, 19 A.2d 62 (1941).

■ The contract of guaranty should be construed as a whole and effect given to all the language employed, if possible. *Laurentide Finance Corp. v. Capital Products Corp.,* 392 F.2d 444, 447 (3d Cir. 1968). When other instruments constituting parts of the same transaction are either by an-

nexation or reference, or otherwise constitute a part of the guaranty, such instruments should be read together and each construed with reference to the other. 38 C.J.S. *Guaranty* § 38, at 1179–80 (1943). Thus a writing referred to in a contract of guaranty becomes a part of the guaranty contract by virtue of the references and the two must be considered together in determining the construction and validity of the guaranty contract. *Id.*

The Guarantees clearly set forth the obligations and liabilities of the defendants to guarantee the payment "when due" of all of the "obligations and liabilities" of S&R under the terms of the three promissory notes:

> 1. *Guarantee.* The undersigned absolutely, unconditionally and irrevocably guarantees the due and punctual payment when due of all of the Maker's obligations and liabilities to the Investors under the Maker's promissory notes....

■ Defendants argue that, according to the promissory notes, S&R is only required to make payments to the plaintiffs from income or proceeds of the boxcars, and since S&R is not receiving income or proceeds from the boxcars, S&R has no obligation to make payments to the plaintiffs, *i.e.,* "nothing is due", and therefore, according to the language of the guarantees, the defendants are not liable to the plaintiffs. This argument, however, is based on the erroneous assumption, that S&R is presently excused from making payments because of the absence of income and proceeds from the boxcars. The notes between S&R and the plaintiffs are subject to the security agreement of May 7, 1979,[7] which provides that the plaintiffs have the right to acceler-

ate payment upon the occurrence of a default regardless of whether or not S&R is receiving income or proceeds from the lessee:

> At any time after the occurrence of an Event of Default and while the same remains uncured, Agent may declare, by written notice to the Debtor, the entire unpaid balance of the principal of the Notes and interest accrued thereon to be immediately due and payable....
>
> . . . .
>
> Nothing herein contained shall limit, restrict, or impair Agent's right to accelerate payment of the Notes upon the occurrence of an Event of Default, to bring suit and obtain a judgment against the Debtor on the Notes or this Agreement for the full amount of the unpaid principal of the Notes, interest thereon and all other amounts payable by the Debtor pursuant hereto (provided that the liability of the Debtor on any such judgment and the satisfaction thereof shall be limited as hereinabove provided)[8] . . . .

The security agreement also provides the following:

> Lender will not proceed for the collection of any amount payable hereunder and under the Notes, against, or execute upon, any other assets of the Debtor or the partners thereof. Any judgment entered in any action for recovery of any amount due hereunder and under the Notes against the Debtor will not be a lien against any other property of the Debtor or the partners thereof....

The only reasonable interpretation of this language is that, following an event of default, the plaintiffs may accelerate and obtain a judgment against S&R for the total

---

7. The notes between S&R and plaintiffs, dated June 1, 1979, provide the following: This Note is one of several Notes limited in aggregate amount of $2,606,156 and is secured under and is subject to the terms of a security agreement between Maker and Investor dated as of May 7, 1979 ("Security Agreement") which assigns and grants to the Investor's Agent (named therein) a security interest in that certain lease (the "Lease") under which National Railway Utilization Corporation and Pickens Railroad Company are lessees and Maker is lessor made as of March 28, 1979, and in the items of railway rolling stock which are the subject of such Lease. Reference is hereby made to the Security Agreement for the terms on which this Note is secured and payable.

8. "As hereinabove provided" refers to the provision in the security agreement that a judgment cannot be collected from, nor execution be issued against, any other assets of S&R.

balance due under the note, but judgment cannot be satisfied from any partnership assets other than the boxcars or from any personal assets of the partners. This is the only logical interpretation that is consistent with the provisions for liability, acceleration of payment of the notes and the restriction on satisfaction of a judgment contained in the notes and the security agreements.

██ Under the terms of the notes, the sum of $89,182.70 was to have been paid to plaintiffs on June 28, 1980. The payment has not been made, nor have any other payments on the notes been made since the June 28th payments became due. Counsel for the plaintiffs sent a letter to the general partner of S&R, with copies to the guarantors, advising that, pursuant to their right to accelerate in the event of nonpayment of an installment, plaintiffs had declared the entire unpaid balances of the notes to be immediately due and payable on account of the default.[9] The total amount owed on the notes exceeds $1,335,557, the aggregate liability of the defendants under the guarantees (Affidavit of Michael T. O'Kane ¶ 6). Since under the notes, S&R's obligation to the plaintiffs is now "due," the defendants are liable to plaintiffs under the guarantees for the sum of $1,335,557. Accordingly, judgment will be entered in favor of the plaintiffs for that amount. Since plaintiffs' claim arises out of a contractual right to payment, and the damages are ascertainable by computation, plaintiffs will be awarded prejudgment interest at the legal rate of six percent on this sum. *Paine Webber Jackson & Curtis, Inc. v. Manzo*, C.A. No. 80–3192, slip op. at 5 (E.D. Pa., filed March 24, 1981) (Pollak, J.); *Palmgreen v. Palmer's Garage, Inc.*, 383 Pa. 105, 117 A.2d 721 (1955).

**VI.**

Defendants have asserted a counterclaim that plaintiffs are liable for the tort of malicious use of process because it is alleged that this action was commenced with malice and without any justification, privilege or legitimate purpose. Since I have granted plaintiffs' motion for summary judgment, it is obvious that the counterclaim must fail. Accordingly, judgment will be entered in favor of the plaintiffs on the counterclaim.

---

9. As mentioned earlier, the notes are subject to the terms of the security agreement, which establishes the "Events of Default," among which is

> 1. the failure by Debtor to pay any amount of principal of or interest on the Notes when due, whether at the maturity thereof or by reason of any requirement for the prepayment thereof, by acceleration or otherwise, and such failure shall continue for five days after Agent shall have given the Debtor written notice thereof; ...

and permits acceleration under the following provision:

> At any time after the occurrence of an Event of Default and while the same remains uncured, Agent may declare, by written notice to the Debtor, the entire unpaid balance of the principal of the Notes and interest accrued thereon to be immediately due and payable ...