In the Matter of Richard O. BERTOLI, Debtor-in-Possession.

John E. BERTOLI, Plaintiff-Respondent,

v.

Bernard J. D'AVELLA, Jr., Trustee, Defendant-Appellant-Movant,

and

Cameron F. MacRae, III, Defendant-in-Intervention.

Civ. A. No. 85–4324.

United States District Court, D. New Jersey.

March 6, 1986.

Ronald M. Sturtz, Hannock & Weisman, Roseland, N.J., for trustee Bernard D'Avella, Jr.

Jack M. Zackin, Ravin, Greenberg & Zackin, P.A., Roseland, N.J., for trustee Cameron F. MacRae, III.

Robert A. Baime, Sills Beck Cummins Zuckerman Radin Tischman & Epstein, P.A., Newark, N.J., for John Bertoli.

## OPINION

SAROKIN, District Judge.

In this interlocutory appeal of the bankruptcy court's order denying the trustee's motion to dismiss plaintiff Richard Bertoli's adversary complaint, the court is called upon to decide two issues. First, it must determine whether an interlocutory appeal is appropriate in this matter. If so, the court must next determine whether the bankruptcy court erred in concluding that the claim was not barred by principles of res judicata in light of a state court adjudication of a related matter. Having reviewed the standards for interlocutory appeals of bankruptcy matters under 28 U.S.C. § 158(a), the court concludes that interlocutory adjudication is proper in this case. Further, having examined the nature of the state court proceeding and its relation to the issues presented here, the court concludes that the bankruptcy court's determination must be reversed on the basis of res judicata.

## BACKGROUND

A detailed analysis of the facts surrounding John Bertoli's participation in the state court proceeding entitled *Executive Securities Corp. v. Bertoli,* Civil No. C–5088–79 (N.J.Super. Feb. 23, 1983), is essential to this court's evaluation of this bankruptcy appeal. According to the findings made by Judge Castano in that proceeding, John Bertoli's brother, Richard, is the former president and chief operating officer of Executive Securities Corporation, which went bankrupt in 1975. After Cameron MacRae III was appointed trustee, he brought suit on behalf of Executive Securities alleging that three months after the company shut down Richard Bertoli fraudulently transferred personal and corporate assets in the effort to put them beyond the reach of creditors, whose claims exceeded $2,000,-000. The principal defendants originally named in that action were Richard Bertoli, SYS Industries (a Bertoli family holding company), Door Openings Corporation (another family corporation), and John Bertoli in three capacities: individually, as custodian for Richard Bertoli's three minor children, and as the sole general partner of Rutherford Corporation. Prior to trial, a settlement was reached in which John Bertoli in his individual capacity only and Door Openings were released as defendants. John Bertoli remained before the court, however, in his capacity as the general partner of Rutherford and as the custodian for the children of Richard Bertoli.

After a lengthy trial in which John Bertoli testified, the court found that Richard Bertoli had transferred Executive Securities' assets to Rutherford and Door Openings in order to defraud Executive's creditors and shareholders. The court's accompanying opinion described in detail the nu-

merous and intricate indirect transfers used by the defendants Richard and John to "systematically strip[ ] a number of entities in which Richard had a substantial direct or indirect interest of all their valuable assets." (op. at 4). The opinion noted further that "all of the assets were effectively conveyed to one transferee, Rutherford Construction Corporation (RCC), a New Jersey limited partnership, formed at the time of the transfers and obviously for the express purpose of being the transferee. The partnership was made up of John, as general partner, and Richard's three minor children as limited partners." *Id.* at 4–5. Devoting an entire section of the opinion to John Bertoli's participation, and entitling it "John's Fraud", the court proceeded to explain that the systematic nature of the transfer plan established "that John was an informed participant in his brother's plan," and thus that "the fraud was equally attributable to the debtor, Richard, and to the transferee, John." *Id.* at 10. Finally, the court explicitly addressed, and rejected, the Bertolis' attempts to justify the transactions as being in good faith, commenting that the various facets of their story were "a fiction", "absurd", "unconvincing", "ludicrous", and "immeasurably complicated by the numerous gaps and contradictions in the Bertolis' account of the disputed transaction". Based on these findings, the court entered judgment "(a) restraining John Bertoli individually and as custodian of Richard's minor children from disposing of any property of RCC or DOC/NJ, and (b) appointing a receiver for all of the property of RCC and DOC/NJ".

Subsequently, John Bertoli appealed to the Appellate Division and the Supreme Court of New Jersey, claiming that the trial court's judgment against him was null and void because it bound him in his individual capacity even though the pretrial settlement established that he was not a party to the state court proceeding in that capacity. Although the Appellate Division agreed that the judgment could only touch John Bertoli "in his capacity as custodian and the person in control of Rutherford and Door Openings," *Executive Securities Corp. v. Bertoli,* Civil No. A–3164–82T2 (N.J.App.Div. May 22, 1984), it nonetheless concluded that there was no fatal infirmity in the trial court's judgment since the limitation on his activities would be identical whether the judgment were worded to enjoin him "individually" or as a "custodian". The New Jersey Supreme Court denied the petition for certification.

Then, on October 11, 1983, Richard Bertoli's own estate filed for Chapter 11 reorganization. On April 1, 1985, John Bertoli instituted an adversary proceeding in bankruptcy court under Bankruptcy Rule 7001 against Bernard D'Avella, the chapter 11 trustee of the Richard Bertoli estate. The purpose of that suit was to establish that John Bertoli individually had some enforceable rights to the property in the estate involved. In making this claim, Richard Bertoli asked that the judgment of the Superior Court be ignored as null and void because it enjoined him in his individual capacity from receiving or disposing of any of that property. The trustee filed a motion to dismiss the bankruptcy court complaint on the grounds of res judicata and collateral estoppel. On August 15, 1985 the bankruptcy court denied the trustee's motion to dismiss, accepting John Bertoli's argument that since he was not a participant in the state court litigation in his individual capacity, he was not bound by its judgment.

The trustee Bernard D'Avella, joined by Cameron F. MacRae III, trustee for Executive Securities, now requests leave to appeal the bankruptcy court's judgment under 28 U.S.C. § 158(a), claiming that the bankruptcy court erred in refusing to accept trustee D'Avella's res judicata and collateral estoppel arguments. Plaintiff John Bertoli responds that the court's decision to entertain an interlocutory appeal would be improvident, or in the alternative, that the bankruptcy court's decision should be affirmed.

*DISCUSSION*

1. *The Propriety of this Interlocutory Appeal*

■ 28 U.S.C. § 158(a) reads in relevant part:

The district courts of the United States shall have jurisdiction to hear appeals . . . with leave of the court, from interlocutory orders and decrees, of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title.

While the statute sets forth no standard for determining when the district court should grant leave to hear interlocutory appeals, courts construing the provision have adopted the approach set forth in 28 U.S.C. § 1292(b), which provides that standard by which the courts of appeals are to accept interlocutory appeals from the district courts. According to that standard, appeals of interlocutory orders should be permitted where there are substantial grounds for difference of opinion as to the controlling questions of law, and where an immediate appeal from the order may materially advance the ultimate termination of the litigation. *See, e.g., In re Johns-Manville Corp.*, 45 B.R. 833, 835 (S.D.N.Y. 1985); *In re Manville Forest Products Corp.*, 31 B.R. 991, 995 n. 5 (S.D.N.Y.1983).

■ Based on these criteria, an interlocutory appeal in this instance is proper. The matter at issue is whether the state court judgment should preclude plaintiff from claiming any right to assets in the estate of Richard Bertoli when he participated to a significant degree in that litigation, but was not formally a party in his individual capacity. Resolution of this issue involves a balancing of a non-party litigant's procedural right to notice and the opportunity to be heard against concerns for judicial economy, for the avoidance of repetitive litigation, and for other litigants' right to repose. Needless to say, the manner in which the balance is struck in this instance is a matter over which different courts might come to different conclusions.

Furthermore, resolution of the matter at this juncture certainly has the capacity to advance the litigation since one of the court's alternative dispositions will lead to dismissal of the entire action. Should the court adopt the trustees' res judicata argument, there will certainly be avoided the need to use the resources of the bankruptcy court to resolve this matter, and the underlying Chapter 11 reorganization will likely be speeded as well. The court therefore finds it appropriate to hear this interlocutory appeal.

### 2. *The Res Judicata Issue*

There is no dispute here that a state court adjudication may bind the parties to a federal action, including one instituted in the bankruptcy court. *See* C. Wright, A. Miller & E. Cooper, *18 Federal Practice and Procedure* § 4468. Rather, the issue to be resolved is whether it would be fair to bind John Bertoli in his individual capacity to the findings and conclusions rendered in a particular state court proceeding even though he was not formally before that court in that capacity. The bankruptcy court evidently concluded that, absent such formal participation, res judicata could not apply. While the bankruptcy court's solicitude for the procedural rights of this litigant is commendable, this court concludes that, in this instance at least, it exacts too costly a toll on the interest for finality and repose which are at the root of res judicata principles.

■ As a general matter, the bankruptcy court was correct in noting that a party is not normally bound to a prior court adjudication unless that party was an actual participant in that litigation. Indeed, even when a party actually participates in a prior litigation, but does so in a capacity different from that asserted in the later one, that party may in some instances avoid being precluded from retrying the same issues. When the courts have come to such a conclusion, however, they have been careful to emphasize that their disposition was warranted by the particular facts before them, which indicated either that the party's participation in the initial suit was merely peripheral, and therefore unlikely to motivate that party to adjudicate fully, *see, e.g., Handy v. Johns-Manville*, 681 F.2d 334, 340–41 (5th Cir.1982) (no res judicata effect when defendants had settled

case in which evidence against them was weak), or that the party's initial capacity was in conflict with the capacity asserted in the later suit, such that the possibility of subsequent res judicata effect would threaten vigorous litigation of the matters at issue in the original action. When neither of these factors is present, the courts have not hesitated to preclude the party from relitigating the same issues. *See, e.g. Kreager v. General Electric Co.*, 497 F.2d 468, 472 (2d Cir.), *cert. denied*, 419 U.S. 861, 95 S.Ct. 111, 42 L.Ed.2d 95 (1974); *Ritchie v. Landau*, 475 F.2d 151, 154 n. 2 (2d Cir.1973); *U.S. v. Webber*, 396 F.2d 381, 388–90 (3d Cir.1968); *Hyman v. Regenstein*, 258 F.2d 502, 511–12 (5th Cir.), *cert. denied*, 359 U.S. 913, 79 S.Ct. 589, 3 L.Ed.2d 575 (1958); *Adzigan v. Harron*, 297 F.Supp. 1317, 1323 (D.Pa.1969); *U.S. v. Treasure Salvors*, 459 F.Supp. 507, 512–18 (D.Fla.1978).

■ An analysis of the facts of this case establishes that none of the abovementioned concerns which might counsel against application of res judicata is applicable here. The Superior Court's opinion makes clear that John Bertoli's participation in the litigation was central. Indeed, his practical control of the progress of that litigation was so significant that it would in no way be unfair to preclude him from having a second day in court to relitigate questions identical to those already decided. Nor is the court's conclusion changed by the fact that John Bertoli had settled out of the case in his individual capacity. Indeed, John Bertoli's argument that res judicata should not apply to him amounts to no more than an attempt to bootstrap a settlement agreement—whose legal effect, it almost goes without saying, is of a lesser stature than that of an actual adjudication—into a statement of legal rights which holds greater authority than a judicial determination. John Bertoli's absence from the case in his individual capacity might give the court pause if Mr. Bertoli's individual interests conflicted in some way with his responsibilities as a custodian and general partner. Here, however, there was no such conflict. Whether Mr. Bertoli

wore his individual or his custodial hat, his interest was in persuading the court of the same thing: that the allegedly fraudulent transfers to Rutherford, the partnership of which he was the sole general partner, were actually in good faith and for a reasonable consideration. Given this, it cannot be said that Mr. Bertoli lacked either the motivation or the opportunity to present the court with all the facts it needed to know in order to determine whether he should be denied the right to acquire or transfer any interest in the property involved.

CONCLUSION

In light of the foregoing, the court concludes that the bankruptcy court erred in failing to dismiss the complaint of plaintiff John Bertoli in his adversary proceeding against the estate of his brother Richard Bertoli. Accordingly, the judgment of the bankruptcy court is reversed and this matter is remanded for entry of an order consistent with this opinion.