Continental Leasing Corporation, Appellant, *v.*
Lebo et al., Appellants.

Argued November 9, 1970.   Before WRIGHT, P. J., WATKINS, MONTGOMERY, JACOBS, HOFFMAN, SPAULDING, and CERCONE, JJ.

*Samuel M. Rosenzweig,* with him *Aaron Rosenzweig,* and *Rosenzweig & Rosenzweig,* for plaintiff, appellant.

*Herbert B. Lebovitz,* with him *Lebovitz & Lebovitz,* for defendants, appellants.

OPINION BY MONTGOMERY, J., December 10, 1970:

This action in assumpsit is based on a written contract of guaranty entered into between the plaintiff, Continental Leasing Corporation (Continental), the appellant at No. 293, April Term, 1970, and the defendants, Leonard Lebo and Edward R. Cohen, individually and as copartners, trading as Universal Restaurant Equipment Company (Universal), the appellants at No. 275, April Term, 1970, whereby Universal guaranteed the full and prompt performance by Bigelow Restaurant, Inc. (Bigelow), of its obligations under a written lease agreement which Bigelow had entered into with Continental for restaurant equipment which had been supplied by Universal to Bigelow but paid for by Continental.   The original value of the equipment was $9,-790, but the lease covering it was written for 60 months

at $234.18 per month, including $9.01, the Pennsylvania four per cent sales tax, or a total of $14,050.80. After making an advance payment of $1,170.90 and thereafter nine monthly payments of rental, Bigelow was put into receivership, at which time there was an alleged balance of $10,870.53, in unpaid past and future rentals due under its lease with Continental. Subsequently, Continental, as a general creditor of Bigelow,[1] received from the receiver a dividend of $1,195.76, which it applied on the above balance, leaving a new balance of $9,674.77, which, together with attorney fees and interest, Continental now seeks to collect from Universal as the guarantor.

Although Universal alleged in its answer several reasons why certain actions taken by Continental had released and discharged it from the guaranty contract, only two of those reasons are related to the argument now before us on this appeal. Universal contends that the lease, payments under which were the subject of the guaranty, was a security agreement under §9-301, Uniform Commercial Code—Secured Transactions, April 6, 1953, P. L. §3, as amended, 12A P.S. §9-301, and that Continental failed to comply with that provision, in that it did not perfect the security interest by recording a financing statement as required by the Code, thereby losing the protective lien against the goods covered by the lease. Universal also contends that Continental materially altered, varied, and amended the contract of guaranty, thereby releasing and discharging Universal from liability thereunder.

Continental denied that the lease was a security instrument under the Uniform Commercial Code; and it also denied that it had made any changes in the contract.

---

[1] A petition for reclamation of the goods was filed by Continental with the receiver of Bigelow, but it was denied.

The lower court, which heard this case without a jury, was not required to make specific findings of fact and to state its conclusions of law. However, in its memorandum opinion filed with its decision (verdict) it stated that it found there was a duty on the part of Continental to file a financing statement (citing Restatement of the Law of Security, §132) ; that there was no waiver by Universal of this duty; that because of Continental's failure to file such financing statement, Universal suffered a loss to the extent of the value of the goods which could not be repossessed; and that the value of the goods so lost was $3,300, the price which they brought when sold by the receiver.

The final award of damages to Continental was $5,-408.03, as follows:

| | | |
|---|---|---|
| 46 payments at $225.17 | | $10,357.82 |
| Less distribution from receivership providing | $1,195.76 | |
| Less value of goods | 3,300.00 | |
| Less allowance for prepayment | 907.38 | 5,403.14 |
| Net | | $ 4,954.68 |
| Interest May 1, 1968, to November 10, 1969, at 6% | | 453.35 |
| | | $ 5,408.03 |

Both Continental and Universal have appealed. Continental alleges error in the allowance as a credit of $3,300, the value of the goods lost by its alleged failure to file the financing statement. Universal also claims error in the same particular, contending that the only evidence in the record as to the value of the goods lost established their value at $7,000 and not $3,300.

Before analyzing the problem of damages for goods lost, we shall direct our attention to Universal's second

defense, i.e., that the guaranty contract was altered by Continental. The lower court did not accept that defense. However, it made no specific finding on whether the guaranty contract had been altered. The record discloses that this suit was brought on a written contract signed by Leonard Lebo and Edward R. Cohen and that the complaint alleged that they signed it as individuals and copartners trading as Universal Equipment Company, which allegation was admitted in their answer by the defendants. However, when the lease was offered into evidence at the trial, there was affixed to it as Schedule No. 1, a paper marked, "of Guaranty of Universal Equipment Company (a partnership)"; but it was, by its terms, in fact a grant of a security interest in the lease between Continental and Bigelow, by Continental to the Union National Bank of Pittsburgh. In this instrument the lessee (Bigelow) agreed to fulfill the obligations undertaken by it in the lease and authorized the entry of judgment against it by confession. However, Bigelow did not sign the instrument. It bears only the signatures of Continental Leasing Corporation, by Ernest Nappi, and of Universal Restaurant Equipment Company, by Leonard Lebo and Edward R. Cohen.

That was the paper on which a judgment by confession was entered at D.S.B. No. 2380, July Term, 1964, in which proceeding there was filed a paper, purporting to be a true copy thereof, but containing three interlineations of the words "& guarantors" after the word "lessee" in the clause authorizing the confession of judgment. We are convinced from the record that the original instrument did not contain these additional words and that the interlineations appeared only in the alleged copy. That proceeding to obtain a confessed judgment has been abandoned.[2] For that reason, and

---

[2] In behalf of the defendants in that proceeding, on July 20, 1964, the court issued a rule to show cause why the judgment

also for the reason the instrument allegedly altered was not the one on which this suit was brought, we conclude that the lower court did not err in rejecting this alleged defense.

Regarding the original issue, we agree with the lower court that the lease between Continental and Bigelow was a security instrument as contemplated by §9-102 of the Uniform Commercial Code. To perfect the security interest therein, the filing of a financing statement is required under §§9-102, 9-302(1), 9-401(1), and 9-107 of the Code, which requirement Continental did not meet, if it was obligated to do so. Continental denies any obligation to perform this function and it relies on the unconditional terms of the guaranty contract and its provision relating to waiver to sustain its position.

The guaranty contract is unconditional. It recites, "For valuable consideration, . . . Undersigned . . . unconditionally guarantee to you the full and prompt performance by Bigelow . . . of all obligations which Obligor [Bigelow] presently or hereafter may have to you and payment when due of all sums presently or hereafter owing by Obligor to you, and agree to indemnify you against any losses you may sustain and expenses you may incur as a result of any wrongful act of Obligor."

The waiver provision on which Continental relies is: "This shall be a continuing guaranty and indemnity and, irrespective of the lack of any notice to or consent of Undersigned, their obligations hereunder shall not be impaired in any manner whatsoever by any . . .

"(b) adjustments, compromises or releases of any obligations, of Obligor, Undersigned or other parties,

---

should not be opened and a rule to show cause why the judgment should not be stricken. However, since these rules have remained unanswered by Continental, the rules may be made absolute on proper application to the court by the defendants therein named.

or exchanges, releases or sales of any security of Obligor, Undersigned or other parties; (c) fictitiousness, incorrectness, invalidity or unenforceability, for any reason, of any instrument or writing, or acts of commission or omission by you or Obligor;".

In refusing to give effect to this provision of the contract the lower court relied on Restatement of the Law of Security, §132:

## "SURRENDER OR IMPAIRMENT OF SECURITY
### BY CREDITOR

"Where the creditor has security from the principal and knows of the surety's obligation, the surety's obligation is reduced pro tanto if the creditor (a) surrenders or releases the security, or (b) wilfully or negligently harms it, or (c) fails to take reasonable action to preserve its value at a time when the surety does not have an opportunity to take such action."

We agree with the lower court that, under general conditions, the nature of this security would impose upon Continental the duty of preserving its value since Continental was the only one that could take the appropriate action to perfect its lien against the goods, i.e., file the financing statement.

However, this was not an ordinary situation. It varied from normal in that Universal had already sold and delivered the goods to Bigelow before it approached Continental for the purpose of having Continental finance the transaction; and it was only at the insistence of Universal and the tender of guaranties that Continental reluctantly did so.[3] Furthermore, before seeking financial aid from Continental, Universal had delivered the goods to Bigelow, at which time it could

---

[3] These guaranties were by the defendants separately and as partners and, also, by two other individuals associated with Bigelow, namely, John S. Muran, the president of Bigelow, and James A. Ventrone, its secretary-treasurer.

have demanded a security instrument from Bigelow and perfected it, which, of course, it did not do. Being engaged in this type of enterprise, Universal was familiar with the usages of the trade and could also have requested Continental to perfect the instrument for the benefit of Universal, i.e., protecting Universal's right of subrogation should it have become necessary for it to fulfill its guaranty obligation. No such request was made by Universal.

Although this question has not been passed on directly by the appellate courts of Pennsylvania, it has been decided by the courts of other jurisdictions. In *Joe Heaston Tractor & Implement Company v. Securities Acceptance Corporation*, 243 F. 2d 196 (10th Cir. 1957), it was held on a similar "unconditional guaranty", the fact that the creditor who took chattel mortgages from the debtor failed to perfect the lien by proper filing as required by him, did not release the guarantor from his obligation on any theory of implied agreement for the creditor to do so, the contract of guaranty not specifically requiring the creditor to take such action. Also see *Nation Wide, Inc. v. Scullin*, 256 F. Supp. 929 (D.N.J. 1966), affirmed, 377 F. 2d 554 (3d Cir. 1967). We are persuaded by the sound reasoning in these two cases and agree with the conclusion reached therein, particularly, that an unconditional guaranty is one whereby the guarantor agrees to pay or perform a contract on default of the principal without limitation. It is an absolute undertaking to pay a debt at maturity or perform an agreement if the principal does not pay or perform. The waiver provision of the contract supports this conclusion.

Therefore, we hold that the present situation is not one that falls within Restatement of the Law of Security, §132, which was relied on by the lower court; and that the allowance of $3,300 to Universal for the lost goods was error.

The appeal of Universal is dismissed; the appeal of Continental is sustained, and the award in its favor is modified by adding thereto the sum of $3,300 erroneously allowed as a credit on its claim, making the amended award $8,254.14, with interest thereon from March 1, 1968, at six per cent. The Prothonotary is directed to enter judgment for that amount, with interest, in favor of Continental Leasing Corporation and against Leonard Lebo and Edward R. Cohen, individually, and as copartners trading as Universal Restaurant Equipment Company.

Costs of both appeals to be paid by the defendants.