## Massaro v. Industrial Valley Bank

*Stuart R. Lundy,* for plaintiff.
*Kenneth F. Carobus,* for defendant.

BULLOCK, *J.*, June 17, 1980—Before us is defendant's motion for summary judgment. Plaintiff has sued in assumpsit and tort seeking a refund of $22,059.75 (reduced by stipulation to $15,000) paid by him to defendant pursuant to a suretyship agreement between the parties (including plaintiff's wife) signed January 13, 1971 and guaranteeing repayment of a $100,000 loan made by defendant to the business of which plaintiff was principal owner. Defendant made the loan pursuant to the Small Business Act of July 18, 1958, 72 Stat. 384, as amended, 15 U.S.C.A. §631 et seq. The debtor business subsequently went through bankruptcy proceedings. Plaintiff was obliged to pay de-

fendant on his guaranty after it developed that certain company property and inventory in Darby, Pa., had not been subjected to a security interest by defendant.

Plaintiff, in his complaint, has proceeded on two theories: (1) in assumpsit, in that "contrary to the agreement between Plaintiff and Defendant, Defendant failed to file a security interest against the property of Massaro Machine Works, Inc. located in Darby, Delaware County, Pennsylvania," and (2) in tort, in that "the failure of Defendant to properly file security interest against the equipment and other personal property of Massaro Machine Works, Inc. located in Darby, Delaware County, Pennsylvania was negligence on the part of the defendant."

The phrase "file security interest," we believe, somewhat beclouds the facts in this case. Creating a security interest by execution of a security agreement is one act; filing an executed security agreement of record in a public office so that it becomes notice to the world is another. In the present case no security agreement was executed by the parties with respect to any company property in Darby, Pa. Plaintiff is thus really basing his case on the fact that defendant, as a matter of breach of contract and of negligence, failed to execute a security agreement with reference to these items.

As a result of a failure of the parties to execute a security agreement with reference to the Darby property, when the debtor company became bankrupt, any property in Darby was used to satisfy creditors generally and not to satisfy the obligation to defendant. Defendant thereupon called upon plaintiff to pay on the basis of his suretyship agreement $15,000 he would otherwise not have had to pay if

the security agreements regarding inventory and the Darby property had been entered into and properly recorded. Plaintiff now seeks refund of this sum.

The issue before us is, thus, whether any failure on the part of defendant to execute and file security agreements regarding inventory and the Darby property in any way relieved plaintiff of his obligation under the suretyship agreement. Plaintiff contends that he was relieved of his obligation under this agreement to the extent that defendant "impaired" the security interest it held in the debtor company's property. A security interest which has never been obtained, however, cannot be impaired. Restatement, Security, § 132, and the Uniform Commercial Code, 13 Pa.C.S.A. § 3606, both deal with impairment of security and are, therefore, not applicable to the facts of this case.

Even if arguendo there had been some impairment of security in this case, we believe that pursuant to the case of Continental Leasing Corp. v. Lebo, 217 Pa. Superior Ct. 356, 272 A. 2d 193 (1970), defendant herein should prevail. That case dealt with the construction of an "unconditional guaranty." Paragraph 2 of the suretyship agreement herein makes the agreement "absolute and unconditional." Moreover, paragraph 1 of the agreement authorizes defendant to release security. In Continental Leasing Corp., supra, our Superior Court stated at 363:

"Although this question has not been passed on directly by the appellate courts of Pennsylvania, it has been decided by the courts of other jurisdictions. In Joe Heaston Tractor & Implement Company v. Securities Acceptance Corporation, 243

F. 2d 196 (10th Cir. 1957), it was held on a similar 'unconditional guaranty', the fact that the creditor who took chattel mortgages from the debtor failed to perfect the lien by proper filing as required by him, did not release the guarantor from his obligation on any theory of implied agreement for the creditor to do so, the contract of guaranty not specifically requiring the creditor to take such action. Also see Nation Wide, Inc. v. Scullin, 256 F. Supp. 929 (D.N.J. 1966), affirmed, 377 F. 2d 554 (3d Cir. 1967). We are persuaded by the sound reasoning in these two cases and agree with the conclusion reached therein, particularly, that an unconditional guaranty is one whereby the guarantor agrees to pay or perform a contract on default of the principal without limitation. It is an absolute undertaking to pay a debt at maturity or perform an agreement if the principal does not pay or perform. The waiver provision of the contract supports this conclusion."

It is argued, however, that Girard Trust Bank v. O'Neill, 219 Pa. Superior Ct. 363, 281 A. 2d 670 (1971), modifies the law as set forth in Continental Leasing Corp. We do not agree. Girard Trust Bank does not at all address itself to the issue of unconditional suretyship agreements, but does set forth a second basis for the opinion in Continental Leasing Corp., stating at 366:

"On appeal, we recognized the general applicability of Section 132 of the Restatement. We found, however, that the surety failed to protect himself as he did not request the creditor to perfect the security interest, the effect of which would have been to release the surety of the ultimate liability. Section

132 of the Restatement, therefore, was found not to apply."

In the present case, there is both an unconditional suretyship agreement and failure of plaintiff to protect himself by insisting upon security agreements covering inventory and property in Darby, Pa. We believe it important, for certainty in commercial transactions, that courts enforce suretyship contracts in accordance with their clear and unambiguous terms.

The only issues of fact herein, as indicated in the conferences with counsel and the stipulation of facts, are whether defendant bank knew where all the debtor company's property was located and agreed to create a security interest in it. We do not believe, however, that resolution of these issues is necessary to resolve this case. They are irrelevant in light of the unconditional surety agreement. Moreover, in this case, plaintiff was the principal of the debtor business and, therefore, presumably knew at any time what company property was secured with respect to defendant's loan. He acquiesced in the arrangement whereby only the Pottstown property was subjected to defendant's security interest. Though technically he was only a surety, in a certain real sense he was in fact the debtor. As surety, with respect to the subject loan, it was undoubtedly in his best interest that defendant have a security interest in all the company property. However, as principal of the company, he may have had reasons not to want to have all the company property held as security for defendant's loan. In any event, he was clearly in a position to see to it, if he wished, that a surety agreement was entered into with defendant with respect to the Darby prop-

erty. It is highly unseemly that plaintiff, having failed to protect himself by insisting upon such a security agreement, should now attempt to impose a loss resulting from failure of his business on the bank rather than accept it himself.

Plaintiff also contends that under the Small Business Act, supra, he is a third party beneficiary of the agreement between defendant and the Small Business Administration. The agreement between defendant and the administration sets forth as conditions for the administration's guarantee of the loan the creation of defendant's security interest in inventory and equipment, as well as the personal guaranty of plaintiff. Plaintiff argues that he is discharged from his guaranty obligation by defendant's failure to obtain a security interest in the inventory and all the equipment of the subject business. We see no legal basis for this contention. The act empowered the administration to arrange for small business loans which the average lender would consider too risky. The administration does this by guaranteeing up to 90 percent of the loan. The administration may, as a condition of this guaranty, require the lender to obtain security interests in property or to obtain personal sureties or guarantors. Thus, the obligation to pay the loan naturally falls first upon the debtor business. Upon default by the debtor business, the lender can obtain repayment by then resorting to the secured property and/or the personal sureties or guarantors, or finally (up to 90 percent) to the administration. It is the obvious intent of the act to protect the lender, thereby motivating it to make the loan in the first place. The administration may presumably be discharged from its obligation to the lender, if the lender does not comply with the terms of the agreement between those two parties. Moreover, since the act

is intended primarily to benefit small businesses, we can see how, under some circumstances, failure of the lender to comply with the requirements of the contract between the lender and the administration might inure to the benefit of the small business. Under no circumstances, however, do we see why they would inure to the benefit of a surety or guarantor. The guarantor is in no way induced to make his guaranty by virtue of the agreement between the administration and the lender. This is especially true where, as here, plaintiff guarantor is also the principal owner of the debtor business. The guarantor for his own protection may make whatever agreement he wishes with the debtor company as to security interests in physical property as a condition of his guaranty. In the present case, the unconditional guaranty agreement not only is not conditioned upon the defendant's acquiring security interest in all the debtor company's inventory and other property, but would have permitted the bank, once a security interest was acquired, to release it. Finally, we note that the suretyship agreement herein is dated January 13, 1971, whereas the agreement between defendant and the administration was dated February 16, 1971, with approval of the loan by the administration dated March 8, 1971. Thus, plaintiff could not have been relying upon the latter agreement when he became a surety.

## ORDER

And now, June 17, 1980, defendant's motion for summary judgment is granted. Judgment is entered herewith in favor of defendant against plaintiff.