486 A.2d 396

FIRST NATIONAL CONSUMER DISCOUNT COMPANY

v.

Gerald McCROSSAN and Linda L. McCrossan, his wife.

Appeal of UNIVERSAL GUARDIAN CORPORATION.

UNIVERSAL GUARDIAN CORPORATION, Appellant,

v.

Gerald McCROSSAN and Linda L. McCrossan, his wife.

UNIVERSAL GUARDIAN CORPORATION, Appellant

v.

Paul BRUTSCHE and Janet Brutsche, his wife.

Superior Court of Pennsylvania.

Argued June 26, 1984.

Filed Nov. 9, 1984.

Reargument Denied Jan. 22, 1985.

Petition for Allowance of Appeal Denied May 20, 1985.

Howard M. Holmes, Philadelphia, for appellant.

Thomas L. Kelly, Media, for McCrossan.

James L. Shea, Upper Darby, for Brutsche, appellees.

Before OLSZEWSKI, POPOVICH and CERCONE, JJ.

POPOVICH, Judge:

This case involves an appeal from the order of the Court of Common Pleas of Delaware County, later reduced to judgment, entered against the mortgagee/Universal Guardian Corporation in foreclosure actions against the mortgagors/McCrossans and Brutsches. We reverse.

The record reveals that on June 27, 1973, Gerald McCrossan and Paul Brutsche, t/d/b/a McCrossan's Pharmacy, Inc., obtained a loan (principal plus interest) in the amount of $72,480.00 from First National Consumer Discount Co., the predecessor to Universal Guardian Corp., which is presently known as Credico Financial, Inc. Payments were to be made in 120 consecutive monthly installments of $604.00, the first of which was payable August 20, 1973.

In an abundance of caution, the creditor secured home mortgages, a "Guaranty" and a judgment note from the debtors. Thereafter, the mortgages and a financing statement were duly filed with the prothonotary of Delaware County. A similar filing was made with the Secretary of the Commonwealth as to "[a]ll inventory, fixtures and equipment of the pharmacy and drug store." *See* 12A P.S. § 9–401 repealed; as amended at 13 Pa.C.S.A. § 9401.

On April 19, 1974, the pharmacy, needing operating capital, obtained another loan from First National for $13,890.00. At this point, $8,432.00 had been repaid on the initial loan. To secure the new advance, the creditor obtained a second mortgage on the McCrossans' residence. As with the first loan, a judgment note and a resolution of the board of directors authorizing the loan were also executed. However, this time these documents were signed by Gerald McCrossan as president and Linda McCrossan, who became a corporate officer in 1974, as secretary. Likewise, the "Guaranty" was signed only by the McCrossans in their corporate capacity.

It was not long before the $926.00 monthly payment on the second loan proved to be too much for the pharmacy, and it defaulted. In an effort to preserve the business, First National suggested that the pharmacy extend its payments and refinance the 1974 loan. To that end, a judgment note for $10,800.00 was signed on August 7, 1975, by the McCrossans in their corporate and individual capacities. A similarly dated "Agreement To Extend Mortgage Loan" was signed by the McCrossans, this time as individuals only. However, the document neglected to detail the

prior loans of the McCrossans and the documents executed in securement thereof.

An additional item with the legend "First National Fund, Inc.—Settlement Sheet" was signed by the McCrossans. It reflected the amount of the loan, the cash advance ($646.00), the balance due ($6,323.00) on the 1974 loan and the manner of repayment.

As noted earlier, the McCrossans were not alone in this business venture. Paul Brutsche, who owned 12% of the stock, co-signed the resolution of the board of directors and the "Guaranty", as did his wife, in regard to the 1973 loan. The Brutsches also mortgaged their home. In fact, when they changed residences, a new mortgage was drafted on July 19, 1976, at their request to memorialize the continuing mortgagor/mortgagee relationship with First National.

Despite the efforts of the pharmacy to meet its financial obligations, the last reported payments on the 1973 and 1975 loans occurred in April and September of 1976, respectively. It will be recalled that the 1974 loan was satisfied with a refinancing that produced the 1975 indenture.

In March of 1977, the pharmacy sold its operation for $49,188.32. On August 22, 1977, an interpleader action (In re: McCrossan's Pharmacy, Inc. at No. 77–12129) was filed in the Court of Common Pleas of Delaware County, and the money generated from the sale was placed in the court's custody for ultimate distribution to secured and unsecured creditors. Notice of the interpleader action was served upon all known creditors directing each, pursuant to Pa.R. Civ.P. 2309, to file a Statement of Claim.

On January 23, 1978, counsel for the then successor to First National, i.e., Universal Guardian, filed the required statement and sought $67,414.00 from the fund. The claim was predicated upon the June 27, 1973, loan to the pharmacy totaling $72,480.00, the validity of which counsel attempted to establish through a judgment note of even date

and *purportedly* [1] signed by Gerald McCrossan and Paul Brutsche, as president and secretary/treasurer of the pharmacy. Counsel further claimed that his client had "priority over all liens, except [for] that of the Commonwealth of Pennsylvania, Department of Revenue," by filing the financing statement with the prothonotary and the Secretary of the Commonwealth. By doing so, he argued, Universal Guardian was a secured creditor.

By order of Judge Reed dated May 3, 1978, Universal Guardian, having failed to appear in court with the other creditors in interest, was directed to:

> ... present to the Court not later than twelve noon Monday, May 15, 1978, such document or instrument, if any they have, to establish a valid secured interest in the fund presently deposited in this Court and created from the sale or transfer of the property of McCrossan's Pharmacy, Incorporated.
>
> Failure to so produce such document shall forever bar them from asserting a secured claim to the said fund.

When the order entered was not complied with, the court, on May 30th, barred, with prejudice, Universal Guardian "from asserting a secured claim to the said fund and ... relegat[ed it] to the status of an unsecured creditor[.]" Thereafter, the fund was distributed, and, of the $51,984.57, Universal Guardian received only $3,584.47.

On August 14, 1978, counsel for Universal Guardian filed exceptions to the distribution. A hearing was scheduled for August 28th. However, for want of prosecution by counsel, the exceptions were dismissed. No appeal was taken therefrom.

Universal Guardian, undeterred by the turn of events surrounding the distribution, instituted actions in mortgage foreclosure in February of 1982 to recoup its losses, i.e., 1) First National Consumer Discount v. Gerald McCrossan and Linda L. McCrossan, No. 76-17329; 2) Universal Guardian Corporation v. Paul Brutsche and Janet Brutsche, No. 80-

---

1. At the February 18, 1982, foreclosure hearing, both men denied having either seen or affixing their signatures to such a note.

2397; and 3) Universal Guardian Corporation v. Gerald McCrossan and Linda L. McCrossan, No. 80–8075. The first suit involved foreclosure on McCrossans' April 19, 1974, mortgage (which was evidence of a $13,890.00 loan to the pharmacy, the balance of which then owed ($6,323.00) was paid off by an indebtedness ($10,800.00) contracted by the McCrossans on August 7, 1975), the second dealt with the Brutsches' July 9, 1975 (redrafted) mortgage (which was security for the pharmacy's 1973 loan) and the third concerned the McCrossans' June 27, 1973, mortgage (which also was security for the pharmacy's loan of even date).

In February, a hearing was held and resulted in a determination by the court that the relationship created by the documents, in particular the concluding paragraph in the "Guaranty" reading "that the undersigned are sureties", was one of principal debtor, creditor and surety. As such, the court opined that the creditor had a duty not to impair the collateral in its control which may have provided the means to satisfy the debt. Under surety law, the court continued, the creditor's failure to verify its "secured" status in the interpleader action prejudiced the sureties' right to subrogation and, thus, discharged the mortgagors/sureties to the amount injured—in this case, total extinguishment of the indebtedness accompanied by dismissal of the complaints in mortgage foreclosure. Exceptions were filed, denied and judgment was entered. This appeal followed.

Of the nine issues raised by the appellant/creditor, we only need concern ourselves with whether the court below erred in finding that the appellant's failure to assert a claim in the interpleader action (i.e., by not filing or maintaining a security interest in the pharmacy's assets), precluded it from seeking recoupment of monies owed through mortgage foreclosure. (See Judge Keeler's "Findings of Fact" and "Conclusions of Law" at page 11)

■ We start our discussion by noting the preoccupation of the parties and the court below with whether a suretyship or guaranty was created herein. Suffice it to say,

based on the record before us, the appellees appear to be sureties rather than guarantors.[2] Further, as stated quite aptly by our Supreme Court,

> whatever [t]he[y] may be termed, the point in hand is covered by citing *Campbell v. Baker*, 46 Pa. 243, where [it was] held that "A guaranty of the payment of a note 'when due' is broken by nonpayment at maturity, and the guarantor[s are] then liable upon [their] contract to the creditor, who is not bound either to pursue the principal or show his insolvency." In other words, when one warrants payment at a particular time, it means just that, and not payment after pursuit and insolvency of the principal debtor, even though the word "guarantee,"— which usually imports the necessity for the latter course, —may be used: see also *Homewood People's Bk. v.*

2. Quoting from 38 C.J.S., Guaranty, § 6c,

> [a]lthough the nomenclature used by the parties is entitled to due consideration, whether the contract is that of suretyship or guaranty does not depend on the use of particular or technical words such as "security," "surety," "guaranty," or "guarantee." It is the nature of the obligation which the parties intended should be created, gleaned from all the language of the instrument as construed in its setting, that determines whether the contract is one of guaranty or suretyship.[77] So, although an agreement to stand as "surety" or become "security" indicates the undertaking of a surety, if the substance and effect of the instrument is that of a guaranty it will be so construed, notwithstanding the word "surety" or "security" is used throughout the contract. On the other hand if the obligation is direct and primary, the contract will be that of suretyship, and not of guaranty, although the word "guaranty" or "guarantee" is employed. A promise to be "responsible" for the contract of another has been held to be a contract of suretyship and not of guaranty, although the circumstances may be such as to constitute it a guaranty.

[77] Pa.—Allegheny County Light Co. v. Reinhold, 7 Pa.Dist. 385, 21 Pa.Co. 118.

In Pennsylvania, the task of ferreting out the intent of the parties to a contractual-debt-obligating-instrument, i.e., whether they intended to establish a suretyship or guaranty, is ameliorated by the Act of July 24, 1913, P.L. 971, § 1, 8 P.S. § 1. Under the Act a written agreement made by one person to answer for the default of another subjects such person to the liabilities of suretyship unless the agreement contains in substance the words "this is not intended to be a suretyship." *Plummer v. Wilson*, 322 Pa. 118, 121, 185 A. 311 (1936). Such a statement was not in the "Guaranty" at bar.

*Hastings,* [263 Pa. 260, 106 A. 308], and authorities cited in connection therewith.

*Miners State Bank v. Auksztokalnis,* 283 Pa. 18, 27–28, 128 A. 726 (1925); *see also Behlen Mfg. Co. v. First National Bank of Englewood,* 28 Colo.App. 300, 472 P.2d 703, 706 (1970) ("... sections [109 and 118] of [50] Am.Jur. [, Suretyship,] accurately state the law as to suretyship and this law is equally applicable to an unconditional guaranty. The guarantor has a right of subrogation to the security upon payment of the obligation....").

 We do not take issue with the general propositions espoused by the court below that under surety law:

... the [creditor] had the duty not to impair the security in its control which may have provided the means of satisfying the debt. *Fegley v. McDonald,* 89 Pa. 128, 130 (1879). The creditor in such a situation must not prejudice the right of the surety to resort to the security when the surety pays the debt and becomes entitled to subrogation. *Franklin Savings & Trust Co. v. Clark,* 283 Pa. 212, 129 A. 56 (1925). Impairment of the collateral discharges the surety to the extent that the unimpaired security would have paid the principal debt or to the extent of the surety's injury. *First Nat. Bank v. Foster,* 291 Pa. 72, 75, 139 A. 609 (1927) (payment of debt); *Robbins v. Robinson,* 176 Pa. 341, 35 A. 337 (1896) (extent of injury); *Girard Trust Bank v. O'Neill,* 219 Pa.Super.Ct. 363, 367, 281 A.2d 670, 672 (1971) (extent of injury). This principle applies even when the surety was not in a position to enforce its subrogation rights when the impairment occurred. *First Nat. Bank & Trust Co. v. Stolar,* 130 Pa.Super.Ct. 480, 488, 197 A. 499 (1938).

Here, [creditor] perfected its security interest in the property of McCrossan's Pharmacy, Inc., on July 2, 1973. *See* 13 Pa.C.S.A. §§ 9302 & 9303 (1981) (Uniform Commercial Code—Secured Transactions).

(*See* Judge Keeler's "Findings of Fact" and "Conclusions of Law" at 11–12); *see also* 72 C.J.S., Principal and Surety, § 197.

However, the court below considered *de minimus* the language in the documents captioned "Guaranty", which, in effect, neutralized the precepts just recited.

To explicate, the two "Guaranty" documents signed here, one by all four defendants/appellees for the 1973 loan (Exhibit P–3) and the other only by the McCrossans as to the 1974 loan (Exhibit P–10), were identical in form. For instance, the language read that the signators "guarantee[d] ... full, prompt and unconditional payment of all moneys ... due or which m[ight] become due" from the debtor/pharmacy to the creditor. Their liability was not to be "affected, impaired or discharged, in whole or in part, by ... the fact that any money," payment of which was guaranteed thereunder, might "become due or payable ... in connection with, or by reason of, any agreement, document or transaction which m[ight] be irregular or unenforceable for any reason."

Further, in paragraphs 3 and 5 of the "Guaranty", the creditor reserved to itself certain rights, e.g., to proceed against the signators, upon default by the debtor/pharmacy, without first having to take action of any kind against the debtor/pharmacy; and "to compromise, release, substitute, exercise, enforce or fail or refuse to exercise or enforce any claims, rights, or remedies of any kind which [creditor] m[ight] have, at any time, against Debtor or any guarantor, endorser, or other party liable for Debtor's debts or any portion thereof, or with respect to any security held by [creditor], and to release, substitute or surrender and to enforce, collect or liquidate, or to fail to refuse to enforce, collect or liquidate, any security of any kind held by [creditor] at any time."

■ We are persuaded that the waiver provision of the "Guaranty" is an unconditional one whereby the sureties (McCrossans and Brutsches) agreed to pay on default of the principal debtor/pharmacy without limitation. *See Continental Leasing Corp. v. Lebo*, 217 Pa.Super. 356, 272 A.2d 193 (1970). Thus, the appellees-Brutsches' defense of im-

pairment of collateral,[3] although firmly embedded in Pennsylvania common law, must give way to the equally entrenched "proposition that an explicit waiver precludes a guarantor [or a surety] from asserting them in an action to recover under the guaranty." *Ford Motor Credit Co. v. Lototsky,* 549 F.Supp. 996, 999 (E.D.Pa.1982).

Stated otherwise, the appellees and the court below are correct in remarking that under certain circumstances if the creditor has not exercised reasonable (due) diligence in preserving the security, then the obligation of the appellees would be reduced to the extent that they were injured. Restatement of Security, § 132 (1941); *see also* 72 C.J.S., Principal and Surety, § 197; 38 C.J.S., Guaranty, §§ 7, 61. However, because the guaranty agreement in the instant case is an absolute and unconditional one, and because the contract of guaranty did not require the creditor to take such action, the foregoing rule of law has no applicability. *See The Paul Revere Protective Life Insurance Co. v. Weis,* 535 F.Supp. 379 (E.D.Pa.1981); *Continental Leasing Corp. v. Lebo, supra.*

The Third Circuit Court of Appeals, in a strikingly similar *procedural* mis-step case, considered "... a creditor who [was] a party to an unconditional guaranty contract and who additionally [held] a security interest, ... not [to be] under an affirmative duty to preserve the collateral." *Fireman's Fund Insurance Co. v. Joseph J. Biafore, Inc.,* 526 F.2d 170, 175 (3rd Cir.1975). In the case *sub judice,* there is an absence of any element of reliance on the part of the appellees,[4] and, therefore, the creditor was not under any

**3.** The Restatement of Security, § 132 (1941) summarizes the defense as follows:
> Where the creditor has security from the principal and knows of the surety's obligation, the surety's obligation is reduced pro tanto if the creditor
> (a) surrenders or releases the security, or
> (b) wilfully or negligently harms it, or
> (c) fails to take reasonable action to preserve its value at a time when the surety does not have an opportunity to take such action.

**4.** This determination is based upon the fact that the appellees waived their right to rely on the principal debtor's collateral in paragraph 5,

duty to preserve or protect the collateral. *The Paul Revere Protective Life Insurance Co., supra.* The case of *Girard Trust Bank v. O'Neill,* 219 Pa.Super. 363, 281 A.2d 670 (1971), which is cited by both the court below and the appellees in support of this argument, is inapposite because *Girard* "does not at all address itself to the issue of unconditional suretyship agreements" as is present in the case at bar. *The Paul Revere Protective Life Insurance Co., supra,* 535 F.Supp. at 385, *citing Massaro v. Industrial Valley Bank,* 16 Pa.D. & C.3d 499, 502 (C.P.Phila.1980).

Since the court's ruling dismissing the appellant's complaints in mortgage foreclosure was premised in large part upon the erroneous belief that the appellant had an obligation to perfect its security interest in the pharmacy's collateral as a condition precedent to instituting suit, we reverse and remand for a recalculation of the amount due the appellant/mortgagee in light of our ruling.[5]

Judgment and order reversed. Jurisdiction relinquished.

subpart (c) of the "Guaranty". (Reproduced *supra*) *See also Ford Motor Credit Co. v. Lototsky,* 549 F.Supp. 996, 1000 n. 9 (E.D.Pa.1982).

5. We leave it to the discretion of the court on remand whether additional evidence need be taken on this issue. It will be recalled that a hearing in February of 1982 was conducted to rule on the propriety of the actions in mortgage foreclosure. Thus, we deem it prudent to avail the court and parties the opportunity to assess and recalculate the amount due and owing the mortgagee. This we believe can be accomplished by the court below, which has evidenced an appreciation of the facts that should not be curtailed by our substitution for as of yet unannounced *new* findings of fact and conclusions of law.

However, we will mention that our review of the testimony given at the February, 1982, hearing is sufficient to establish the existence of liability on the part of the appellees.

Gerald McCrossan and Paul Brutsche admitted signing, along with their wives, all but the 1973 judgment note. Albeit Gerald and Paul stated they had not read the "Guaranty" closely, this would be no defense to their obligation to repay Universal Guardian.

The documents, read in toto, leave little doubt that the McCrossans ·and Brutsches are indebted to the creditor. All but the amount owed requires to be decided. ·