**AMERICAN ACCEPTANCE CORPORATION, Plaintiff,**

v.

**SCOTT HOUSING SYSTEMS, INC., Defendant.**

**Civ. A. No. 84–1313.**

United States District Court, E.D. Pennsylvania.

Nov. 21, 1985.

Morton Newman, Leonard Dubin, and Peter J. Boyer, Blank, Rome, Comiskey & McCauley, Philadelphia, Pa., for plaintiff.

Wanda D. Foglia, Saul, Ewing, Remick & Saul, Philadelphia, Pa., for defendant.

## MEMORANDUM and ORDER

SHAPIRO, District Judge.

This action was commenced by plaintiff, American Acceptance Corporation, to recover from defendant, Scott Housing Systems, Inc., as guarantor of promissory notes issued in connection with the financing of its mobile home sales. Jurisdiction is based on diversity of citizenship between the parties; 28 U.S.C. § 1332 (1977). Before the court are plaintiff's motion for summary judgment pursuant to Fed.R. Civ.P. 56 and plaintiff's motion for leave to file an amended complaint pursuant to Fed. R.Civ.P. 15. For the reasons set forth, plaintiff's motion for summary judgment will be granted but its motion for leave to file an amended complaint will be denied.

On or about March 7, 1983, plaintiff entered into a written agreement with defendant whereby plaintiff agreed to extend credit to defendant's dealers to enable them to purchase defendant's mobile homes for resale. The March 7, 1983 Agreement (the "Agreement") did not specify the terms, rates or conditions for plaintiff's extension of credit to defendant's dealers. Instead, the specific arrangements for credit extension were developed by dealer programs and set forth in rate letters. Paragraph 1 of the Agreement provided that these rate letters were incorporated and made a part of the Agreement.

Paragraph 11 of the Agreement provided that the Agreement should be governed by Pennsylvania law. Defendant has offered no reason why the parties' choice of law should not control. Accordingly, Pennsylvania law is applied in determining the legal consequences of the Agreement.

Plaintiff and defendant developed a financing program for independent dealers of defendant. The terms, rates and conditions were set forth in a rate letter dated August 1, 1983 (the "Rate Letter"). The first dealer to enroll in the Independent Dealer Program was Luneau Mobile Home Sales, Inc. ("Luneau"), a dealer of defendant in Louisiana.

Pursuant to the Agreement and the Rate Letter, plaintiff provided Luneau with floor plan financing. Plaintiff received a note and collateral chattel mortgage from Luneau (the "Luneau Paper") to secure Luneau's indebtedness.

Plaintiff filed the Luneau financing documents with the recorders of mortgages in the parishes where the mortgaged mobile homes were located to perfect its security interest in the collateral. Under Louisiana law, the financing documents should have been recorded with the Department of Public Safety instead of the Recorders of Mortgages in the various parishes. *See* La.Rev. Stat Ann. 32: 710 (West Supp.1985).[1]

On February 7, 1984, Luneau signed a promissory note payable to "Bearer" in favor of plaintiff and executed a "Louisiana Sale and Mortgage" that was also signed by plaintiff. The Louisiana Sale and Mortgage recites that plaintiff sold Luneau the mobile homes purchased from defendant but financed by plaintiff; Luneau mortgaged the mobile homes to plaintiff to secure payment of the promissory note.

In or about March, 1984, Luneau defaulted on its obligations to plaintiff. Plaintiff demanded that defendant purchase the Luneau Paper pursuant to paragraph 6 of the defendant's Agreement with plaintiff (under which defendant guaranteed Luneau's indebtedness to plaintiff), but defendant refused.

Luneau also defaulted on an obligation to ITT Commercial Finance Corporation

---

1. Plaintiff has an action pending in the Eastern District of Louisiana against the attorney who allegedly failed to perfect plaintiff's security interest in the mobile homes. The action is captioned *American Acceptance Corporation v. Elmer G. Gibbons, III, Inc.*, a Professional Corporation, Elmer G. Gibbons, III, and Imperial Casualty and Indemnity Company, No. 84–4862.

("ITT") secured by a chattel mortgage. ITT seized the mobile homes in Louisiana to enforce a chattel mortgage. Plaintiff intervened in the action pending in the United States District Court for the Western District of Louisiana, No. CV–84–1058–LC to assert its claim to the collateral. The court has not been informed of any decision regarding the competing claims in that forum.

In deciding a motion for summary judgment, the court must determine whether the moving party has carried its burden of establishing that there are no genuine issues of material fact and it is entitled to judgment as a matter of law. *See Hollinger v. Wagner Mining Equipment Co.*, 667 F.2d 402, 405 (3d Cir.1981). All reasonable inferences from the evidentiary materials of record must be drawn in favor of the non-moving party. *Small v. Seldows Stationery*, 617 F.2d 992, 994 (3d Cir.1980). Examining the entire record of the instant case in the light most favorable to defendant, defendant has failed to show why plaintiff is not entitled to judgment as a matter of law.

The defendant raises two defenses to its obligation to plaintiff as guarantor under the Agreement. First, defendant argues that the obligation to purchase the paper was discharged by plaintiff's failure to perfect a security interest in the collateral. The United States District Court for the Western District of Louisiana has not yet determined whether plaintiff's filing the financing documents in the wrong offices impaired the collateral. However, even if plaintiff's mistake did impair the security of the collateral, defendant's obligation has not been discharged.

Under Pennsylvania common law, a creditor has a duty not to impair security in its control; *see First National Consumer Discount Company v. McCrossan*, 336 Pa. Super. 541, 486 A.2d 396, 399 (1984). But the rule against the impairment of collateral has limited applicability to a guaranty that is absolute and unconditional. *Id.* 486 A.2d at 401. "An unconditional guaranty is one whereby the guarantor agrees to pay or perform a contract on default of the principal without limitation." *Continental Leasing Corp. v. Lebo*, 217 Pa.Super. 356, 272 A.2d 193, 197 (1970). "A creditor who is a party to an unconditional guaranty contract and who additionally holds a security interest, is not under an affirmative duty to preserve the collateral unless the guarantor relies on the collateral." *Fireman's Fund Insurance Co. v. Joseph T. Biafore, Inc.*, 526 F.2d 170, 175 (3d Cir. 1975); *Paul Revere Protective Life Insurance Co. v. Weiss*, 535 F.Supp. 379, 384 (E.D.Pa.1981), *aff'd without opinion*, 707 F.2d 1403 (3d Cir.1982).

Paragraph 6 of the Agreement provides, in pertinent part:

> In the event of a default on any item of Manufacturer Dealer Paper subject to the terms hereof, then at any time after such default occurs, Manufacturer [Scott Housing] agrees to purchase the item of Manufacturer Dealer Paper in default from American [AAC] upon demand.... The purchase price shall be the total amount unpaid on such item of paper at the time of purchase, including all interest and charges then accrued and unpaid thereon, and all of the costs and attorney's fees specified in paragraph four (4) hereof, which may relate to such item of paper, and said price shall be paid by Manufacturer to the holder thereof making demand within forty-five (45) days of the demand for purchase....

The Agreement further provides, in the same paragraph 6 that:

> The *liability of Manufacturer* to purchase an item of Manufacturer Dealer Paper in default *shall be unconditional and absolute, and shall not be subject to reduction, set-off, counter-claim, or recoupment.* (Emphasis supplied).

The language of the Agreement clearly imposes an absolute and unconditional obligation on defendant to repurchase the Luneau Paper upon Luneau's default and plaintiff's demand.

Defendant argues its obligation under the Agreement was modified by the Rate Letter, which was incorporated and made a

part of the Agreement by its terms. The Rate Letter provides that "AAC shall use its best efforts to acquire a security interest under the Uniform Commercial Code (or such similar interest as may be available under Louisiana law for Louisiana transactions)...." Defendant contends that it intended and understood the Rate Letter to require plaintiff to perfect a security interest in the collateral as a condition precedent to its obligation to purchase the Luneau Paper on default.

■ The parole evidence rule bars the introduction of extrinsic evidence to construe a written agreement unless there is ambiguity in the terms of the document. Whether an agreement is ambiguous is a question of law to be decided by the court. *BBCI, Inc. v. Canada Dry Delaware Valley Bottling Co.*, 393 F.Supp. 299, 301 (E.D.Pa.1975). "If its provisions are unambiguous and clear, then its interpretation becomes a question of law for the Judge and parole evidence is not admissible." *Id.*

The provisions of this contract are clear and unambiguous. The Rate Letter imposes an affirmative obligation on plaintiff only to use its best efforts with respect to the collateral; there is no language in the Rate Letter to suggest plaintiff's best efforts have to be successful as a condition precedent to defendant's guaranty obligation. Had the parties intended plaintiff's perfection of a security interest as a condition precedent to defendant's guaranty obligation, the Rate Letter should have so stated. This court may not rewrite the terms of the contract to carry out only the defendant's subjective intention when such an intention is inconsistent with the plain language agreed to by both parties.

Even if this court were to interpret the Rate Letter as requiring plaintiff to use its best efforts as a condition precedent to defendant's guaranty obligation, defendant has not offered evidence sufficient to create an inference that plaintiff failed to do so. Defendant argues that plaintiff "blindly relied" on the advice of counsel instead of checking available information to be sure that the actions of its attorney were proper. Ordinarily, plaintiff's own employees perfected its security interests in accordance with the Uniform Commercial Code ("UCC"). But plaintiff retained special Louisiana counsel for the Luneau financing because the collateral was located in Louisiana, a state which has not adopted the UCC. Plaintiff's reliance on counsel satisfied its obligation to use its best efforts as a matter of law.

■ Had defendant alleged negligence of plaintiff in selection of the attorney (*e.g.*, the attorney selected by plaintiff had a reputation for incompetence and plaintiff relied on the attorney despite its awareness of his reputation), there might be a genuine material issue of fact. But no negligence or facts supporting an inference of negligence have been averred of record. Defendant is correct that the determination of whether a "best efforts" duty has been satisfied is an inherently factual determination depending on all the circumstances. *See Madreperla v. The Williard Co.*, 606 F.Supp. 874, 878 (E.D.Pa.1985). But as with all factual determinations, where there is no evidence sufficient to raise an issue for trial as to a material fact, the court is not precluded from entering summary judgment on the facts that have not been or cannot be disputed.

■ The defendant's second defense is that the Louisiana Sale and Mortgage executed by Luneau and plaintiff was a novation releasing defendant of any obligation to purchase the Luneau Paper.[2] Under Pennsylvania law, the essential elements of a novation are the displacement and extinction of a prior contract, the substitution of a new contract, sufficient consideration therefor, and the consent of the parties.

---

**2.** Defendant also argues that the Louisiana Sale and Mortgage constituted either an accord and satisfaction or a giving in payment under Louisiana law. (A giving in payment occurs when a debtor gives a thing to a creditor who is willing to receive it in payment of a sum which is due). Because Pennsylvania law, not Louisiana law, governs this action, the defenses raised under Louisiana law are without merit.

The party asserting the existence of a novation has the burden of proving that the parties' later agreement was specifically *intended* as a complete substitute for any and all prior Agreements. *First Pennsylvania Bank N.A. v. Triester*, 251 Pa.Super. 372, 380 A.2d 826 (1977). In satisfying this burden, defendant must overcome the legal presumption that, "the substituted paper is not taken in discharge, but is received as collateral security for the payment originally undertaken." *Citizens' Bank of Wind Gap v. Lipschitz*, 296 Pa. 291, 145 A. 831 (1929); *First Pennsylvania Bank N.A. v. Triester*, 251 Pa.Super. at 382, 380 A.2d at 831. .

 Whether there is novation is ordinarily a question of fact. But where the party seeking to establish a novation does not and can not produce evidence of mutual assent to the purported novation, no question of fact exists. There is no language in the Louisiana Sale and Mortgage or any other document which supports the defendant's contention that the plaintiff and Luneau intended the Sale and Mortgage to discharge defendant from its guaranty obligation under the Agreement.[3] Defendant offers no other evidence sufficient to create an inference that plaintiff intended to accept the paper executed by Luneau as a substitute for the obligation of defendant. No question of fact existing, the Sale and Mortgage executed between plaintiff and Luneau did not constitute a novation as a . matter of law.

 Defendant argues that its obligation to plaintiff is limited to $500,000, the credit limit established by plaintiff in a letter dated August 3, 1985. Plaintiff has established that it subsequently agreed to defendant's request to raise the credit limit to $750,000. Defendant requested the increase in credit when it sold homes to Luneau and submitted invoices to plaintiff for credit in excess of $500,000. Defendant received the face amount of these invoices from plaintiff. Having benefited from its request that plaintiff waive the credit limit, defendant can not now assert the credit limit as a defense.

Under the terms of the Agreement, defendant must pay plaintiff the face amount of Luneau's indebtedness to plaintiff at the time of Luneau's default. Luneau defaulted in March, 1984, at which time Luneau's indebtedness to plaintiff was in the amount of $677,891.

Defendant also owes plaintiff interest since that time at a rate of 1.5% in accordance with the Rate Letter. Defendant is entitled to credit of payment in August of 1985 in the amount of $10,560 and the interest should be calculated accordingly. Judgment will be entered in favor of plaintiff for the total amount so calculated.[4]

Plaintiff agreed to withdraw its motion for leave to file an amended complaint if its motion for summary judgment were granted. The court having granted plaintiff's motion for summary judgment, plaintiff's motion for leave to file an amended complaint is now moot.[5]

3. Defendant relies in part on the fact that the Louisiana Sale and Mortgage pledging the mobile homes as security for a promissory note refers to American Acceptance as seller and Luneau as purchaser. It also recites:

> Purchasers also agree that in the event that the above described property is seized to enforce a mechanic's lien and privilege or landlord's lien and privilege or any other lien and privilege, although it is understood and known both to Seller and to the Purchasers that the Chattel Mortgage herein granted primes all the aforesaid liens and privileges, it will be at the option of the Seller to pay the sum in controversy and the amount of money so expended shall become a part of this mortgage and be secured thereby.

The statements securing American's interest in the collateral do not constitute evidence of a novation with Luneau intended by American to release Scott Housing Systems as guarantor of the Luneau indebtedness.

4. Plaintiff agreed to waive its request for attorney fees at oral argument held on October 1, 1985.

5. Plaintiff's amended complaint would have added a claim against Samuel P. Scott, shareholder of defendant, on his guaranty of full and prompt payment of defendant's indebtedness to plaintiff. The amended complaint would also have added a claim against defendant and Scott under the Racketeer Influenced and Corrupt

Organizations Act, 18 U.S.C. 1961 *et seq.*, for

alleged invoice padding.