513 A.2d 434

**McKEESPORT NATIONAL BANK, Appellant,**

v.

**Lowell M. ROSENTHAL and Georgia Rosenthal and Wilfred Weiss and Lila L. Weiss, Appellees.**

Superior Court of Pennsylvania.

Argued March 28, 1986.

Filed July 23, 1986.

Walter F. Baczkowski, McKeesport, for appellant.

Janice L. Morison, Pittsburgh, for Rosenthal, appellees.

Gayle L. Godfrey, Pittsburgh, for Wiess, appellees.

Before ROWLEY, WIEAND and DEL SOLE, JJ.

WIEAND, Judge:

■ Where the obligation of a surety is absolute and unconditional, is it subject to extinguishment or reduction because the obligee has failed to exercise diligence in collecting accounts receivable which have been assigned by the principal debtor as security for the indebtedness? The trial court held that the creditor's failure to exercise diligence to enforce the accounts receivable constituted a defense to the surety's liability. Therefore, the court opened a judgment confessed against the surety after a default by the principal debtor. We reverse.

North American Trading Company (NATCO) is a Pennsylvania corporation which is wholly owned by Lowell M. Rosenthal, who serves as corporate president, and Wilfred A. Weiss, who acts as secretary-treasurer. Rosenthal and Weiss executed a written agreement guaranteeing repayment of all sums advanced and to be advanced by McKeesport National Bank to NATCO. In July, 1982, the bank extended to NATCO a line of credit for $200,000.00, in exchange for which NATCO executed and delivered to the bank a promissory note. NATCO and Indiana Boneless Beef Distributors, Inc., another corporation owned by Rosenthal and Weiss, also assigned accounts receivable to the bank to secure the loan.[1] A default in repayment occurred

---

1. Although an assignment of accounts receivable was executed, it does not appear that copies of the corporate accounts receivable were ever delivered to the bank or that the debtors were given notice of the assignment.

in the summer of 1984,[2] and the bank made a demand on Rosenthal and Weiss for payment. When payment was not forthcoming, judgment was confessed against them on August 31, 1984 for $169,500.00, plus interest and attorney's fees, as authorized by their written agreement. On September 21, 1984, petitions to open or strike the judgment were filed. In defense of their liability, Rosenthal and Weiss alleged that the bank had not been diligent in collecting the accounts receivable which had been assigned as security for the loan. The trial court concluded that, if proved, this would constitute at least a partial defense to the assumed liability of Rosenthal and Weiss and opened the judgment. The bank appealed.

A petition to open judgment is an appeal to the equitable powers of the court. As such it is committed to the sound discretion of the hearing court and will not be disturbed absent a manifest abuse of discretion. *Lincoln Bank v. C. & H. Agency, Inc.*, 500 Pa. 294, 456 A.2d 136 (1982). A judgment taken by confession will be opened in only a limited number of circumstances, and only when the person seeking to have it opened acts promptly, alleges a meritorious defense and presents sufficient evidence of that defense to require submission of the issues to the jury.

*First Seneca Bank & Trust Co. v. Laurel Mountain Development Corp.*, 506 Pa. 439, 442–443, 485 A.2d 1086, 1088 (1984). That appellees' petition was promptly filed is not disputed. Rather, the issue in the trial court was whether Rosenthal and Weiss had alleged a meritorious defense to their contractually assumed obligation to pay the indebtedness owed by their corporation.

Appellees' evidence showed that appellant bank had been aware in June, 1984 that NATCO was experiencing financial difficulties. Despite this knowledge, the bank did not attempt to collect the accounts receivable which had been assigned to it as collateral security for NATCO's indebtedness. The failure to proceed diligently, the trial court held,

2. Both corporations are now insolvent.

was at least a partial defense to appellees' agreement to pay the moneys owed by their corporation.[3]

The contract between the parties states specifically that it "is intended to be a contract of suretyship, upon which each of the [appellees] intend to be legally bound." As a general rule, a creditor has a "duty not to impair the security in its control which may have provided the means of satisfying the debt ... [and] must not prejudice the right of the surety to resort to the security when the surety pays the debt and becomes entitled to subrogation." *First National Consumer Discount Co. v. McCrossan*, 336 Pa.Super. 541, 548, 486 A.2d 396, 399 (1984). See: *Franklin Savings & Trust Co. v. Clark*, 283 Pa. 212, 129 A. 56 (1925); *Fegley v. McDonald*, 89 Pa. 128 (1879). "[U]nder certain circumstances, if the creditor [does] not exercise[ ] reasonable (due) diligence in preserving the security, then the obligation of the [surety is] ... reduced to the extent that [he was] injured." *First National Consumer Discount Co. v. McCrossan, supra* 336 Pa.Super. at 550, 486 A.2d at 400–401, citing *Restatement of Security* § 132 (1941); 72 C.J.S. *Principal & Surety* § 197; 38 C.J.S. *Guaranty* §§ 7, 61. However, where the guaranty is absolute and unconditional and does not require the creditor to take any action to preserve the security, the creditor's failure to do so will not relieve the surety's obligation to pay upon default. See: *First National Consumer Discount Co. v. McCrossan, supra; Continental Leasing Corp. v. Lebo*, 217 Pa.Super. 356, 272 A.2d 193 (1970); *Ford Motor Credit Co. v. Lototsky*, 549 F.Supp. 996 (E.D.Pa.1982); *Paul Revere Protective Life Insurance Co. v. Weis*, 535 F.Supp. 379 (E.D.Pa.1981), *aff'd*, 707 F.2d 1403, 1405 (3d Cir.1982).

The surety agreement executed by Rosenthal and Weiss provided that they "warrant[ed] and [became] surety for the punctual payment at maturity ... of each and all loans,

---

3. The evidence did not show and the trial court did not hold that the value of the accounts receivable had been impaired by the bank's failure to act promptly to collect them. When the corporations went into bankruptcy, however, the accounts receivable were seized by the trustee.

advances, credits and ... all other indebtedness of every kind ... owing to [appellant] by the Borrower...." The contract further stated that the surety "waive[d] ... presentment, demand, protest and notice of dishonor of any and all of said instruments hereinbefore referred to, and likewise waive[d] demand for payment and notice of non-payment of any and all loans, advances, credits and other obligations hereinbefore referred to, and promptness in commencing suit against any party thereto or liable thereon and/or in giving any notice to or of making any claim or demand hereunder upon the [appellees]." Furthermore, appellees expressly "consent[ed] and agreed[d] that [appellant could] at any time ... in [its] discretion ... exchange, release and/or surrender all or any of the collateral security, or any part or parts thereof ... without notice to or further assent from [appellees], who ... agreed[d] hereby *to be and remain bound upon this guaranty, irrespective of the existence, value or condition of any collateral and notwithstanding any such change, exchange ... [or] release....* " (emphasis added).

We conclude from the language of the written agreement that appellees' duty to repay the loan, in the event of default by the principal obligor, was absolute and unconditional and did not depend upon an inability to realize satisfaction from the collateral. Thus, the obligee was not required to look to the accounts receivable pledged as security before demanding payment from the surety. It must necessarily follow, therefore, that it was not a defense to the surety's obligation that the obligee failed to move promptly to collect those accounts receivable which had been assigned to it as security for the principal indebtedness.

Appellees rely upon a decision of this Court in *Girard Trust Bank v. O'Neill*, 219 Pa.Super. 363, 281 A.2d 670 (1971) to support their argument that they should be relieved of their assumed liability to the extent that the bank could have satisfied the principal indebtedness from the accounts receivable. That decision, however, did " 'not at

all address itself to the issue of unconditional suretyship agreements'" and, therefore, is inapposite. See: *First National Consumer Discount Co. v. McCrossan, supra* 336 Pa.Super. at 551, 486 A.2d at 401, quoting *The Paul Revere Protective Life Insurance Co. v. Weis, supra* at 385.

We conclude, for these reasons, that the trial court was in error when it held that the bank's failure to act promptly to pursue collection of the accounts receivable constituted a defense to the surety's obligation to make payment upon default of the principal obligor.[4]

The order opening the judgment is reversed.

[4.] Weiss' petition to open the judgment contained an averment that his signature had been forged on checks used to draw on the line of credit which had been advanced to NATCO by the bank. The evidence showed, however, that the use of corporate checks to draw on the account had been duly authorized and that no objection had been communicated to the bank during the several years in which statements of the loan account had been sent to NATCO. This averment, therefore, was inadequate to constitute a defense to Weiss' guarantee to repay moneys advanced by the bank to NATCO.