**UNITED STATES of America, on Behalf of its agency, the SMALL BUSINESS ADMINISTRATION, Plaintiff,**

**v.**

**The FIRST NATIONAL BANK OF JERMYN, Defendant.**

**No. 3:CV–90–1277.**

United States District Court, M.D. Pennsylvania.

July 23, 1991.

James A. Gibbons, Asst. U.S. Atty., Scranton, Pa., for plaintiff.

Gerald J. Butler, Scranton, Pa., for defendant.

MEMORANDUM

McCLURE, District Judge.

I.  BACKGROUND

This action was commenced on July 5, 1990 by the United States of America on behalf of the Small Business Administration ("SBA") and is currently before the court on the parties' cross motions for summary judgment. The undisputed relevant facts of this case are as follows:

Defendant First National Bank of Jermyn ("Bank") is, and was at all times relevant to this action, a participating lender in the SBA's guaranty loan program. Under

the terms of the Loan Guaranty Agreement, executed March 27, 1974, SBA guaranty loans are subject to the SBA's rules and regulations, as amended. The agreement provides further:

> (3) Closing and Disbursement of Loans. Lender [Bank] shall close and disburse each loan in accordance with the terms and conditions of the approved loan authorization. Lender shall cause to be executed a note and all additional instruments and take such other actions which shall, consistent with prudent closing practices, be required in order to fully protect or preserve the interests of Lender and SBA in the Loan.

Pursuant to the agreement, on March 23, 1977, the Bank submitted an application for guaranty to the SBA on behalf of Fowler Floor and Wallcovering, Inc. (FF & W). On April 29, 1977, the SBA agreed to guaranty ninety percent of a loan in the amount of $250,000 to be made by the Bank to FF & W. In accordance with the agreement, this approval was embodied in a Loan Authorization. The Loan Authorization required a mortgage on two parcels of real estate ("the Capouse Avenue properties").

On August 8, 1977, the bank executed a Secondary Participation Agreement with the SBA, and pursuant thereto sold the guaranteed share of the FF & W loan on the secondary market to The National Bank of Olyphant. Under the terms of the Secondary Participation Agreement the Bank remained liable under the original Loan Guaranty Agreement; it certified to the SBA that the loan had been made and disbursed and would be serviced in compliance with said Loan Guaranty Agreement. If the loan were to go into default and the Bank refused to repurchase the loan from The National Bank of Olyphant, the SBA was liable to repurchase the loan. Pursuant to the Secondary Participation Agreement, the Bank agreed that such a purchase by the SBA did not release or otherwise modify any of its obligations to the SBA arising from the loan and the Loan Guaranty Agreement, and did not waive any of the SBA's rights against it.

Following a default on the loan, the secondary holder, The National Bank of Olyphant, demanded repurchase by the Bank. The Bank refused, and on October 15, 1982, the SBA honored its guaranty to the secondary holder, by paying $198,528.09, which included interest at the rate of nine and one-half percent (9.5%) per annum. On May 12, 1986, FF & W filed a petition in bankruptcy. Subsequently, the SBA discovered that the mortgage taken by the Bank and assigned to the SBA on the Capouse Avenue properties was invalid. The mortgages were executed by C. Norman Fowler and Carol B. Fowler, while the property was not owned by these individuals. The property was at all relevant times titled in the name of FF & W, which did not execute a mortgage.

On July 16, 1987, the SBA made demand upon the Bank for reimbursement under the Loan Guaranty Agreement for the amount paid by the SBA to The National Bank of Olyphant, representing 87.41% of the loan balance. The Bank refused to reimburse the SBA, claiming that it was not obligated under the agreement to make such a reimbursement. Consequently, the United States of America, on behalf of the SBA, filed this action to recover the loan balance of $283,251.14 as of June 5, 1990, with interest of $49.33 for each day after June 5, 1990.

## II. STANDARD OF REVIEW

Summary judgment is appropriate only when there is no genuine issue of material fact to be resolved. Fed.R.Civ.P. 56. All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. The entire record must be examined in a light most favorable to the non-moving party. *Continental Insurance v. Bodie*, 682 F.2d 436, 438 (3d Cir.1982). If there is no genuine issue of material fact, summary judgment may be granted to the party entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

Since a motion for summary judgment is designed to go beyond the pleadings, factual specificity is required of a

party who opposes such a motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265, 273 (1986). Accordingly, in order to defeat a properly supported motion for summary judgment, a party may not merely restate the allegations of his complaint. *Farmer v. Carlson*, 685 F.Supp. 1335, 1339 (M.D.Pa.1988). Nor can a party rely on self-serving conclusions, unsupported by specific facts in the record. *Celotex Corp. v. Catrett*, supra, at 322–23, 106 S.Ct. at 2552–53, 91 L.Ed.2d at 273. A non-moving party must point to concrete evidence in the record which supports each essential element of his case. *Id.* If the party fails to provide such evidence, then he is not entitled to a trial and the moving-party is entitled to summary judgment as a matter of law. Fed.R.Civ.P. 56(e).

As set forth above, the relevant facts of this case are undisputed. The court need only determine whether, under the aforementioned facts, the Loan Guaranty Agreement obligates the Bank to reimburse the SBA for the amount paid to the secondary holder.

## III.  DISCUSSION

The Loan Guaranty Agreement specifically required the Bank to "close and disburse each loan in accordance with the terms and conditions of the approved loan authorization" and "cause to be executed a note and all additional instruments and take such other actions which shall, consistent with prudent closing practices, be required in order to fully protect or preserve the interests of [the Bank] and SBA in the loan." Therefore, the central question before the court is whether the failure to secure valid mortgages on the Capouse Avenue properties constituted a failure to close the loan in accordance with the loan authorization or was not consistent with

prudent closing practices required to fully protect the SBA's interest in the loan.

The Bank contends that it fulfilled all of its obligations under the Loan Guaranty Agreement and Loan Authorization in this matter. Specifically, ¶ 7 of the Loan Authorization provided: "An Attorney's Certificate of Title satisfactory to Bank is required to real estate described as Items 3(c)1, 3(c)2 and 3(c)6." Items 3(c)1 and 2 described the Capouse Avenue properties. The Bank argues that it did obtain a certificate of title from the borrower's attorney, which indicated to its satisfaction that C. Norman Fowler and Carol B. Fowler owned the property. Unfortunately, the certificate of title was inaccurate, the property was not owned by these individuals, but by FF & W.

The Bank maintains that this is the only obligation it was required to fulfill as far as securing mortgages on the property was concerned. In support of this it cites the following: 1) the Loan Authorization did not require the Bank to certify the title, 2) nothing in the Loan Guaranty Agreement or the Loan Authorization requires the Bank to perform a title search, and 3) the loan conditions, including the requirement of a certificate of title, contained in the Loan Authorization, expressly apply to the borrowers, not the Bank.

The SBA argues that the Bank's reliance on the certificate of title provided by the borrower's attorney was not consistent with prudent closing practices as required by the Loan Guaranty Agreement.[1]

In ascertaining the meaning of language in a guaranty contract, the same rules of construction apply as in the case of other contracts; the court must determine and give effect to the intention of the parties as ascertained by a fair and reasonable interpretation of the terms used in the guaranty agreement, read in light of the attendant circumstances and purposes for

---

1. The SBA also maintains that the Loan Authorization required the Bank to obtain a valid mortgage and since the mortgage it obtained was invalid, the Bank is in breach of its agreement with the SBA. This argument, however, is inconsistent with the Loan Guaranty Agreement itself, which requires the Bank to take action consistent with prudent closing practices to protect the SBA's interests. If it was intended that liability be imposed upon the Bank for obtaining an invalid mortgage even where the "prudent closing practices" requirement was met, this requirement would be meaningless.

which the guaranty agreement was made. *Hyster Credit Corp. v. O'Neill*, 582 F.Supp. 414, 416 (E.D.Pa.1983); *Paul Revere Protective Life Ins. Co. v. Weis*, 535 F.Supp. 379, 386 (E.D.Pa.1981). Additionally, the regulations covering guaranteed loans tie the obligations of the lender to both the Loan Guaranty Agreement and the Loan Authorization. 13 C.F.R. § 122.-10(a)(6)(i) (1974). All parties that seek to participate in programs administered by the SBA are charged with knowledge of these provisions. *Federal Crop Insurance v. Merrill*, 332 U.S. 380, 384–85, 68 S.Ct. 1, 3, 92 L.Ed. 10 (1947).

■ Based on the foregoing, it is beyond question that although the Loan Authorization specified what was required of the borrower, the Bank was obligated to protect the SBA's interest by securing the requirements of the Loan Authorization in a manner consistent with prudent closing practices. The Bank obtained an attorney's certificate of title indicating that C. Norman Fowler and Carol Fowler owned the Capouse Avenue properties. The Loan Authorization required such a certificate of title. It did not require that the Bank obtain the certificate from its own attorney; nor did it require title insurance. It merely required the Bank to obtain a certificate from "an attorney" which was "satisfactory to [the] Bank". Obtaining such a certificate of title from a borrower's attorney under the circumstances of this loan is consistent with prudent closing practices.

Even if the Bank, in an abundance of caution, had employed its own attorney to review and approve the closing documents, there is nothing in the record to indicate that any deficiency would have been observed. The court's review of the closing documents which were made part of the record does not reveal any facial discrepancy which might have given the Bank reason to question the accuracy of the certificate of title at the time of closing. Furthermore, the certificate recited that the attorney was currently insured as to title searches, in the sum of $250,000 (the loan amount) and named his insurance company and the policy number, thus providing reas-

surance to the Bank beyond that expressly required in the Loan Authorization.

The SBA has failed to provide any evidence of record to show that the Bank did not act in a manner consistent with prudent closing practices in accepting this certificate of title at face value. The SBA has failed to present any evidence that, in closing the loan, the bank failed to take any action a prudent bank would have taken or that the bank took action a prudent bank would not have taken.

We therefore enter the accompanying order.

### ORDER

For the reasons stated in the accompanying memorandum, IT IS ORDERED THAT:

1. The motion by defendant First National Bank of Jermyn (record document # 21, filed April 1, 1991) for summary judgment is granted.

2. The motion by plaintiff United States of America, on behalf of its agency, the Small Business Administration, (record document # 26, filed May 20, 1991) is denied.

3. The Clerk of Court is directed to enter judgment in favor of defendant and against plaintiff and close the case file.